[Civ. No. 12174. First Dist., Div. Two. Aug. 20, 1942.]

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Defendant and Appellant; PHILIP L. BUSH et al., Interveners and Appellants.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Defendant and Appellant.

Norman J. Hearn for Interveners and Appellants.

Cooper, White & Cooper and Irving G. Breyer for Respondent.

DOOLING, J. pro tem.—From a decree quieting the title of San Francisco Unified School District to a parcel of land at the corner of Fifth and Market Streets in San Francisco, defendant city and county of San Francisco and plaintiffs in intervention constituting the board of education of the city and county both appeal.

The lot in question was originally conveyed in 1858 to the Board of Education of the City and County of San Francisco by the Commissioners of the Funded Debt of the city of San Francisco, pursuant to a statute enacted earlier in the same year. (Stats. 1858, p. 341.) In 1908 the board of education executed a lease of this property to a private corporation for a term of thirty-five years. With the end of this term drawing near a controversy arose as to whether

title to this lot was vested in San Francisco Unified School District or in the city and county of San Francisco, and the suit now before us on appeal was commenced to determine this controversy.

A preliminary question is presented as to whether title, if it has not become vested in appellant city and county, is now in respondent San Francisco Unified School District or in its board of education. This question hardly passes beyond the academic, since, to protect the school district in any event, the board of education filed a complaint in intervention asserting title in itself and the board, as noted, has taken an appeal from the judgment.

██ Under the statute of 1858 above referred to, and the deed made by the Commissioners of the Funded Debt to the board of education pursuant to its terms, title to the property vested in the grantees and "their successors in office." Without pursuing the subsequent statutory history further back than 1872, with the adoption of the Political Code in that year, the Legislature incorporated into that code section 1575 reading as follows:

"Every school district must be designated with the name and style of '........District (using the name of the district), of........County' (using the name of the county in which such district is situated); and *in that name the Trustees may* sue and be sued, and *hold and convey property* for the use and benefit of such district." (Italics ours.)

This section remained in full force and unamended from 1872 until the adoption of the School Code in 1929 when its provisions were reenacted in sections 2.140 and 2.141, School Code, and have been in effect as so enacted ever since. During this seventy-year period appellants have not called to our attention any legislative enactment purporting to authorize boards of education or of school trustees to hold school property in their names and during that entire period the legislative intention as expressed in the sections above quoted has apparently been that school property should be held in the names of the school districts and not in the names of their governing boards. Since the public schools are a matter of state concern (*Butterworth* v. *Boyd,* 12 Cal. (2d) 140, 152 [82 P. (2d) 434]; *Esberg* v. *Badaracco,* 202 Cal. 110, 115 [259 Pac. 730]) and the Legislature has control over the management and title to school property, at least so long as it is not diverted from school purposes (*Pass*

*School District* v. *Hollywood City School District,* 156 Cal.
416 [105 Pac. 122, 20 Ann. Cas. 87, 26 L. R. A. (N. S.)
485]), we must hold that the Legislature had power to des-
ignate the school districts as successors in title to school
boards which had theretofore held property in trust for school
purposes, and we are satisfied that such was the purpose and
effect of Political Code, section 1575. Upon the creation of
the San Francisco Unified School District the title to this
property passed to it under School Code, section 2.2120.

■ Appellant city and county calls attention to Statutes
1873-4, page 848, and bases upon its provisions a claim that the
trust created by the deed of 1858 from the Commissioners
of the Funded Debt to the board of education was revoked
as to the lot in question by an implied repeal. The statute
of 1858 above referred to, under which the deed was exe-
cuted, provides in section 7:

"This trust may, at any time, be revoked by the Legisla-
ture of this state." (Stats. 1858, p. 342.)

In considering the effect of this statute of 1873-4 it must
be borne in mind that under the statute of 1858 the lot in
question had been conveyed to the board of education "in
trust for said city and county . . . for the use and benefit of
the school department of said city and county. . . ." (Stats.
1858, p. 341, § 1) and that the Legislature of the State had
plenary power over its disposition so long as it was not
diverted from the purposes of such trust. (*Pass School Dis-
trict* v. *Hollywood City School District, supra.*) It was also
true, of course, that prior to 1879 the Legislature was not
prohibited from the enactment of special legislation dealing
with this particular lot. (*Nevada School District* v. *Shoecraft,*
88 Cal. 372 [26 Pac. 211].)

By section 1 of this statute of 1873-4 "the Board of
Supervisors of the City and County is hereby authorized to
lease, for a term of twenty years" the lot here in suit by
public bid under certain provisions therein set out. By sec-
tion 2 the rentals from the lot were to be used solely for the
purpose of paying the principal and interest of the school
bonds authorized to be issued under section 3 of the act.
The proceeds of the sale of such bonds by section 5 were
authorized to be expended "for the sole purpose of purchas-
ing school sites and erecting school buildings." Section 6
imposed the duty on the board of supervisors to pay any
deficiency of principal and interest of such bonds, if any

occurred, from the general fund. Section 7 provided for the retirement of the bonds and section 8 read:

"All Acts and parts of Acts, so far as they are inconsistent with the provisions of this Act, are, for the purposes of this Act, hereby repealed."

It will be noted that rather than diverting the property from the purposes of the trust to which it was devoted under the statute of 1858, this statute was in furtherance of that trust: "for the use and benefit of the school department of said city and county." The unusual form of the repealing section is also enlightening. By its terms inconsistent acts are not absolutely repealed. They are repealed only "for the purposes of this Act." It is a fair construction of this statute that it was the purpose of the Legislature in its enactment not to repeal the trust as to this lot created under the statute of 1858, but only to grant certain special powers to the board of supervisors over the lot for a limited period in furtherance of that trust; and not to divest the title of the school district to this lot, but to repeal its powers over it only so far as inconsistent with the carrying out of the purposes of the act, i.e., the making of a lease of the lot for a period of twenty years by the board of supervisors in the manner therein provided for the benefit of the public schools of San Francisco. Ample reason for this special procedure is to be found in the fact that by section 6 the full faith and credit of the city and county were placed behind the bonds authorized to be issued and paid from the proceeds of the leasing of the lot.

This construction comports with the settled rule that repeals by implication are not favored; that it will be presumed that the Legislature did not intend by a later act to repeal a former one, if by a fair and reasonable construction effect can be given to both; and that to overcome this presumption the two acts must be so inconsistent that they cannot have concurrent operation. (*Boyd* v. *Huntington*, 215 Cal. 473, 482 [11 P. (2d) 383] ; *Penziner* v. *West Am. Fin. Co.*, 10 Cal. (2d) 160, 176 [74 P. (2d) 252] ; *Fay* v. *District Court of Appeal*, 200 Cal. 522, 538 [254 Pac. 896] ; *Railroad Comm.* v. *Riley*, 192 Cal. 54, 57 [218 Pac. 415] ; 23 Cal. Jur. 694.)

It is inconceivable to us that merely as an incident to a statute by which a valuable parcel of land devoted to school purposes was made the means of financing a twenty-year

bond issue also for school purposes it was the legislative intent that at the expiration of the twenty-year period the land should no longer be devoted to the purposes of public education. The unwisdom of killing the fabled goose to get the golden eggs is classic in our literature.

While the record is silent on the subsequent history of this lot between the time that the bonds authorized by the statute of 1873-4 were retired and 1908, in that year it was the board of education and not the city and county of San Francisco which executed the lease to a private party, and we are entitled to assume that in the interim the title of the school district to the lot had been unquestioned, thus adding the weight of contemporaneous construction to our conclusion that the statute of 1873-4 did not impliedly repeal the trust in this lot for the benefit of the public schools of San Francisco.

■ It is next claimed by appellant city and county that title is vested in it by reason of a McEnerney decree made and entered in 1916, by which title was established in the city and county of San Francisco. The trial court found that insofar as it purported to adjudicate title to this lot this decree was beyond the jurisdiction of the court and void.

With a fairness to be highly commended in a public official appearing in a proceeding affecting the rights of the public, as involved in a controversy between two public agencies both set up for the furtherance of the public good, the city attorney of the appellant city and county of San Francisco stood on no narrow technical ground in the trial court and entered into a stipulation fully and fairly stating the facts underlying the controversy between the city and county of San Francisco on the one hand and the San Francisco Unified School District and its board of education on the other. From this stipulation it appears that in 1908 a lease of this property was made and executed to Wise Realty Company for a term of 35 years ''by the Board of Education of said City and County,'' that on July 1, 1908, the board of education consented to the assignment of this lease to Lincoln Realty Company and that ''the Board of Education, or said plaintiff herein, as its successor in interest, has at all times since the execution of said lease received for its own uses and purposes all rentals paid for the lease and use of said property, and said plaintiff school district is now receiving the same.''

It thus appears from the facts so stipulated that at the time of the commencement of the McEnerney suit relied upon by appellant city and county as a source of title herein the city and county did not have actual and peaceable possession of the property here in litigation, but that such actual and peaceable possession was then and at all times since has been in the lessor school district through its lessee in possession under the aforesaid lease.

The McEnerney Act provides that an action may be brought under it by any person who claims an estate in real property and "who is by himself or his tenant, or other person, holding under him in the actual and peaceable possession of any real property." (Stats. Ex. Sess. 1906, p. 78, as amended, Deering's Gen. Laws 1937, Act 1026, § 1.) In one of the earliest decisions of our Supreme Court construing the provisions of this statute it was determined that the possession so required of a plaintiff is essential to give the court jurisdiction over the subject matter of the action. (*Lofstad* v. *Murasky*, 152 Cal. 64, 70 [91 Pac. 1008].) The rule so established has never been questioned or departed from by our courts and was expressly reaffirmed over twenty years later in *Stanley* v. *Westover*, 93 Cal. App. 97, 105 [269 Pac. 468].

It is true that this jurisdictional defect is not shown to appear on the face of the judgment roll and ordinarily could not be taken advantage of by way of collateral attack for that reason. But the stipulation of the parties brings the case within the exception to that rule recently reaffirmed in *Thompson* v. *Cook*, 20 Cal. (2d) 564 [127 P. (2d) 909]. In that case our Supreme Court reviews the previous authorities and announces the exception in the following language at page 589:

". . . although the judgment or order is valid on its face, if the party in favor of whom the judgment or order runs admits facts showing its invalidity, or, without objection on his part, evidence is admitted which clearly shows the existence of such facts, then it is the duty of the court to declare the judgment or order void."

In the case last quoted from and in those cited therein the lack of jurisdiction shown was of the person of the defendant. However, a judgment void for lack of jurisdiction of the subject matter is equally subject to collateral attack when that fact appears on the face of the judgment roll. (*Capital Bond & Investment Co.* v. *Hood*, 218 Cal. 729

[24 P. (2d) 765]) and equally subject to the rule as quoted in *Thompson* v. *Cook, supra,* from *Hill* v. *City Cab etc. Co.,* 79 Cal. 188, 191 [21 Pac. 728] :

"If the party, however, should admit the facts which show the judgment to be void . . . then, as a question of law upon such facts, we do not see why the case is not like that where a judgment is void upon its face."

We arrive at this conclusion the more readily because to hold otherwise would be to deprive an agency of the state, created by the state Legislature for the purpose of carrying out the important governmental duty of public education under the mandate of our Constitution, of title to public property expressly vested in that agency as a public trust under legislative authority. It strikes us that were that problem before us a serious question of public policy would be presented as to whether by mere inaction or failure to assert its rights against another agency of the state such a public agency could legally allow the legislative trust so created to be destroyed by transfer of title to the other. Our conclusion that the McEnerney decree on the record before us is void for want of jurisdiction of the subject matter makes it unnecessary for us to explore this larger question.

From what has been said regarding the possession of this property during the entire period of the present thirty-five-year lease it is clear that the action is not barred by the Code of Civil Procedure, section 318, since plaintiff not only has been seised and possessed of this property through its tenant, within five years of the commencement of this action, but still has such seisin and possession.

The judgment appealed from is accordingly affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellant City and County of San Francisco's petition for a hearing by the Supreme Court was denied October 15, 1942.