[Civ. No. 14300.   First Dist., Div. One.   Sept. 21, 1950.]

MACMILLAN PETROLEUM CORPORATION, Appellant,
v. CLYDE A. GRIFFIN et al., Defendant; GEORGE H.
JOVICK, Respondent.

Robert E. Hatch and Frederick W. Mahl, Jr., for Appellant.

Courtney L. Moore for Respondent.

BRAY, J.—The basic questions are whether a certain order granting enforcement of a judgment is void because the then plaintiff was a dissolved Nevada corporation, and whether it could be set aside when the true status of the plaintiff was discovered. There is also involved the question of the validity of an ex parte order substituting party plaintiff. There are a number of orders made culminating in the order appealed from.

### SUMMARY

On May 17, 1934, Mileage Gasoline Company (hereafter called Mileage) recovered a judgment against defendants Griffin and Jovick. Approximately 13 years later, in 1947, an application by Mileage's attorney was made to the superior

court on notice to grant enforcement of this judgment and to order execution to issue. Apparently, Griffin was not served, and so far as this appeal is concerned will not be considered further. December 19, 1947, the court made an ''Order Granting Leave to Enforce Judgment'' against Jovick. Thereafter the following orders were made and proceedings had:

April 20, 1948—a minute order denying respondent's motion to vacate the order of enforcement.

May 3—an ex parte order vacating the April 20 order, endorsed on a notice of motion by respondent to be heard May 7 to vacate that very order.

June 14—an order (1) vacating the order of April 20; (2) permitting respondent to renew his motion to vacate the December 19 order; (3) granting his motion to vacate that order; and (4) denying Mileage the right to enforce the judgment.

(June 15—respondent appealed from the April 20 order. This appeal apparently has not been perfected.)

August 10—by stipulation the order of June 14 was vacated and the matters which were before the court on June 14 were to be again presented. At this moment, the order of April 20 refusing to vacate the order of enforcement was in effect, unless the order of May 3 vacating it was valid.

August 21—an ex parte order substituting Macmillan Petroleum Corporation (hereafter called Macmillan) for Mileage as party plaintiff.

September 4—respondent filed notice of motion to set aside this order of substitution.

October 25—Mileage and Macmillan filed notice of motion to vacate the May 3 order which purported to vacate the April 20 order.

December 3—the order appealed from. The order (1) denied plaintiff's motion to set aside the order of May 3; (2) granted respondent's motion to vacate the order of April 20; (3) granted respondent's motion to vacate the August 21 order of substitution; (4) granted respondent's motion to set aside the December 19 order of enforcement and denied plaintiff the right to enforce the judgment.

### Order of Substitution

Respondent contends that neither Mileage nor Macmillan have any standing on this appeal—Mileage, because it is a dissolved Nevada corporation with no capacity to appear in this case; and Macmillan, because the order of substitution

is void. For the reasons hereafter set forth in the discussion concerning the validity of the December 19 order, Mileage has no capacity to carry on this litigation, and hence its appeal must be dismissed. Moreover, if the order substituting Macmillan is valid, Mileage is completely out of the case, and hence could not appeal if it had capacity. Macmillan claims to hold an assignment of the judgment made by Mileage prior to its dissolution. ■ An assignee is entitled to be substituted as party plaintiff in the place of the assignor. (Bancroft's Code Practice and Remedies, vol. 1, p. 651.) ■ That portion of the order of December 3 setting aside the order of substitution was made upon the claim by respondent that the order was invalid because made ex parte. While it is better practice that a notice be given, there is no requirement that notice of application for substitution of a party plaintiff be given to the defendant. (Bancroft's Code Practice and Remedies, vol. 1, p. 654.) Respondent also contended that it was invalid because made by the presiding judge of the superior court rather than by the judge in whose department the matter was pending. It is not clear from respondent's brief whether he still makes the same contention. The point is unfounded. ■ There is but one superior court in a county, and the action of any judge of that court is the action of the court, and not merely of the particular judge. (*Brown* v. *Campbell*, 110 Cal. 644 [43 P. 12].) As the order of substitution was valid, that portion of the order of December 3 vacating it must be reversed.

### Was the Order of Enforcement Void?

The application for order enforcing the judgment was based, as it had to be, on the claim that the then plaintiff had exercised due diligence in not collecting the judgment theretofore. It was accompanied by the affidavit of Attorney Hatch in which he stated that continuously from a time prior to the date of the judgment he had been one of the attorneys for plaintiff. He then set forth efforts to collect the judgment, and that under examination, defendants had stated that they had no assets, but agreed to notify affiant whenever they were able to make any payments. Affiant had never been so notified, but recently had learned that they, or at least respondent, did have assets. There was no mention of Macmillan in the proceedings. On the motion heard April 20 to vacate the December 19 order of enforcement, respondent filed an affidavit claiming that the December 19 order of enforcement

had been taken against him by surprise and excusable neglect in that at that time he did not know that Mileage was a dissolved Nevada corporation. He then set forth that Mileage had been a Nevada corporation which had surrendered its license and authority to conduct business in California, and had voluntarily dissolved on December 24, 1937. A certificate of its withdrawal from business in California and of its dissolution in Nevada accompanied the affidavit. This fact of dissolution has never been denied, and could not be, in view of the certificate of dissolution. On August 21, on the ex parte application for substitution, Macmillan filed an affidavit of Morris P. Macmillan, former president of Mileage and now vice-president of Macmillan, stating that prior to the dissolution of Mileage it had assigned its assets to Macmillan and that as president of Mileage and vice-president of Macmillan he had authorized Attorney Hatch to proceed with the enforcement and collection of all judgments.

It appears from the affidavit later filed by respondent on the proceedings to set aside the order of April 20, which order refused to vacate the order of enforcement, that court and counsel on the April 20 hearing assumed that the effect of the dissolution of Mileage was to be determined by California rather than Nevada law. When respondent's counsel returned to his office he discovered authorities which convinced him that the Nevada law should govern. He thereupon wrote a letter to the judge to whom the matter had been submitted calling his attention to the law on the subject, but the judge had already decided the matter adversely to him by making the April 20 order. Respondent thereupon filed a notice of motion to vacate that order, setting forth in an affidavit these facts.

Respondent concedes that the court had no authority in its May 3 or December 3 order to set aside the order of April 20 denying his motion to vacate the order of enforcement on the grounds of a mistake in law or fact. Such mistake could be considered only on the appeal from that order. Respondent contends, however, that as the order of enforcement of December 19 was void because the court had no jurisdiction of the person of Mileage, likewise the order of April 20 was void in refusing to vacate that order, and that, in any event, the order of enforcement being void, the court's order of December 3 vacating it was proper.

EFFECT OF DISSOLUTION OF NEVADA CORPORATION

██  This question must be determined by the Nevada and not the California law. "It appears to be settled law that the effect of the dissolution of a corporation, or its expiration otherwise, depends upon the law of its domicile (Restatement, Conflict of Laws, pp. 228-229, § 158; 20 C.J.S., pp. 128-129, §§ 1899, 1900), and that a defunct foreign corporation has no greater capacity or higher standing to commence or maintain an action in the state of the forum than it would have in the state of its domicile. [Citations.]" (*Fidelity Metals Corp.* v. *Risley*, 77 Cal.App.2d 377, 381 [175 P.2d 592].) *Estate of Lund*, 26 Cal.2d 472 [159 P.2d 643, 162 A.L.R. 606] (on the question of legitimation of a child), and the cases against the Hibernia Savings & Loan Society (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]) (on the question of membership in the Hibernia Bank), cited by plaintiff on the policy of the lex forum, are not in point. This court takes judicial notice of the laws of the several states. (Code Civ. Proc., § 1875, subd. 3; Corp. Code, § 6602.)  ██  The Nevada law provides that upon filing with the Secretary of State the certificate of dissolution provided for, the corporation is dissolved, although it may continue for the period of three years thereafter for the purpose of prosecuting and defending suits. After the expiration of the three years, it is completely defunct. It " 'no longer exists for any purpose.' " (*Fidelity Metals Corp.* v. *Risley, supra,* p. 382.) There was until 1949 no provision, as under California law, for the directors to continue as trustees to carry on any of its powers. Mileage was dissolved on December 24, 1937, and after December 24, 1940, it was completely defunct. Hence, on December 19, 1947, it had no capacity to move to enforce the judgment and therefore the order was void. In *Fidelity Metals Corp.* v. *Risley, supra,* the charter of a Nevada corporation had been revoked for failure to comply with the Nevada laws in 1938. Having become delinquent in the payment of its property taxes in California, its property here was sold in 1942 to the State of California. The state deeded the property to Risley in 1943. In 1944, more than three years after the revocation of its charter in Nevada, the corporation sued Risley to quiet title to the property. Judgment in the trial court was in his favor. The corporation appealed. Risley then moved to dismiss the appeal on the ground that the corporation plaintiff was without capacity to sue or prosecute the action by reason of the revocation of its charter. In dismissing the appeal the court, after examining

the Nevada cases on the subject, held that under the Nevada law the dissolution of a Nevada corporation deprived the corporation of the right, after three years, to bring or maintain any suit either in that or this state. Therefore, it followed that the corporation was without capacity to appeal. Thus, here, Mileage had no right to appear in the trial court and apply for an order of enforcement. However, its lack of capacity did not appear at that time, and on the face of the proceedings, the order appears valid.

This brings us to the question of whether a court at any time can vacate an order apparently valid on its face, but which actually is void because of the lack of capacity of the party obtaining the order. "Any judicial record may be impeached by evidence of a want of jurisdiction in the court . . ." (Code Civ. Proc., § 1916.) "The jurisdiction sufficient to sustain a record is jurisdiction over the . . . parties . . ." (Code Civ. Proc., § 1917.) In *Lewis* v. *Superior Court*, 21 Cal.App.2d 340 [69 P.2d 220], petitioner had made three successive motions to dismiss an appeal from a justice's court judgment on the ground that the notice of appeal was filed too late. All were denied. Petitioner then sought a writ of prohibition to restrain the superior court from hearing the appeal. The respondents contended, as does respondent here concerning the order of April 20, that the orders denying the motions became res judicata. The court in granting the writ held, "Where a court actually has no jurisdiction of an action, that question may be raised at any time." (P. 343.) Referring to the failure of counsel on the hearing of the three motions to offer proper proof of notice of entry of judgment, which notice started the time in which to appeal, the court said: "Omission by counsel cannot confer jurisdiction on any court where that court in fact has no jurisdiction of a cause." (P. 343.)

Fifteen California Jurisprudence, page 52, section 141, states that a judgment is absolutely void if there was no jurisdiction. Section 145 (p. 59) states the general rule that to be attacked collaterally for lack of jurisdiction, the judgment must be void on its face. Section 146 (p. 61), discussing the limitations on this rule, says: "And it has been held that 'for the purpose of showing that jurisdiction could not have been acquired in the manner shown by the record, evidence is admissible to prove any fact the existence or nonexistence of which is not conclusively established by the record or its recitals.'[4] " (Footnote 4): "Thus if a judgment against a

corporation recites due service of process upon the corporation, or the appearance for it of some authorized person, *it may be set aside upon proof that it had been dissolved,* and had no legal existence for any purpose at the time the action was begun and until the rendition of the judgment.'' (Emphasis added.) The above footnote also refers to section 161 (p. 89) which states: ''But it may always be shown collaterally that the person against whom a judgment was rendered was dead when the action was begun, or, *in the case of a corporation, that its legal existence had been terminated.''* (Emphasis added.)

█ Another qualification of the rule that a judgment may not be collaterally attacked for defects not apparent in the record is applicable here: ''And if the parties admit or stipulate, or fail to object to the evidence of, the facts showing a lack of jurisdiction, it is then established that the judgment is void as effectively as though shown by the record; and whenever such fact is brought to the attention of the court, it is the duty of the court to so declare as a matter of law.'' (15 Cal.Jur. p. 62.) In the instant proceeding appellant did not contest the *fact* of dissolution, but did contest the legal effect. The fact of the dissolution was before the court not only by the affidavit of Jovick but by the provisions of section 6602 of the Corporations Code, which provide that the court shall take judicial notice of ''the official acts affecting corporations of the . . . executive . . . departments of the State or place under the laws of which the corporation purports to be incorporated.'' When the dissolution became apparent to the court, it was bound to find the order void. (See *Thompson* v. *Cook,* 20 Cal. 2d 564, 569 [127 P.2d 909]; *San Francisco Unified Sch. Dist.* v. *San Francisco,* 54 Cal.App.2d 105, 111-2 [128 P.2d 696].)

*Smith* v. *Lewis,* 211 Cal. 294 [295 P. 37], is determinative of the question here. There, a minority stockholder successfully brought an action on behalf of a corporation, judgment being rendered against defendants and in favor of the corporation; then the defendants brought an action to set aside the judgment and enjoin enforcement thereof on the ground that the judgment was void because at the time the former action was commenced the corporation was under suspension of its corporate rights for failure to pay its license tax. The court affirmed judgment for the defendants in their action, partly on the ground that their complaint had been demurred to and hence the disability of the corporation was admitted, and said: ''Reduced to its lowest terms this

controversy is one wherein a judgment is sought to be set aside on the ground that the court was without jurisdiction to enter the same. While it may be said that the judgment on its face did not disclose that the corporation was without power to sue or to have suit brought on its behalf, nevertheless jurisdiction thus appearing was only apparent [citation], and it may always be shown even collaterally that a corporation had no legal existence when the action was commenced. (*Crossman* v. *Vivienda Water Co.*, *supra* [150 Cal. 575 (89 P. 335)].) The same rule would be applicable where the corporation had, as here under the statute, no power to sue." (P. 300.)

Prior to a later statutory enactment on the subject, the rule as to California corporations was: "It is settled beyond question that, except as otherwise provided by statute, the effect of the dissolution of a corporation is to terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name. It is dead, and can no more be proceeded against as an existing corporation than could a natural person after his death. There is no one who can appear or act for it, and all actions pending against it are abated, and any judgment attempted to be given against it is void. As to this, all the text-writers agree, and their statement is supported by an overwhelming weight of authority. . . .

"There can be no serious doubt that such a void judgment can be collaterally impeached and its invalidity shown by any one interested, such as one entitled either as creditor or stockholder to participate in the assets of the corporation, or a stockholder liable for the debts of the corporation." (*Crossman* v. *Vivienda Water Co.*, 150 Cal. 575, 580, 581 [89 P. 335]; see also *Newhall* v. *Western Zinc Min. Co.*, 164 Cal. 380 [128 P. 1040].)

On July 1, plaintiff filed the affidavit of Attorney Hatch in which he states that at the hearing culminating in the order of April 20, it was understood that in the event the court did not see fit to deny respondent's motion on points of law, a further hearing should be had, as to the facts of whether there had been a dissolution of Mileage and whether it had transferred the judgment to Macmillan prior to its dissolution. Plaintiff now urges that in the event we do not agree with its contentions, we remand the case for such a trial of fact. We see no necessity for so doing. There has

not been, nor can there be, any question that Mileage was dissolved on December 24, 1937. The fact that, prior to dissolution, Mileage had assigned the judgment to Macmillan, does not change the situation, nor does the assumption that Macmillan was carrying the action on in the name of its assignor. Long prior to December 19, Mileage was defunct. No attempt was made to show the court then of any diligence by Macmillan, and as pointed out heretofore there could be no showing of diligence by the defunct corporation. The attorney appearing at that hearing only purported to represent Mileage, and his right to represent it had long since ceased. There are no facts that can be shown now which would breathe life into the order of December 19.

Nothing herein stated will prevent an application by Macmillan to the superior court for an order enforcing the judgment. On such application the assignment of the judgment by Mileage prior to dissolution, as well as any facts showing diligence on the part of Macmillan after such assignment, may be shown to the superior court.

Plaintiff attempts to avoid the invalidity of the December 19 order by contending that Macmillan as assignee had the the right to carry on the action in the name of Mileage, its assignor, citing section 385 of the Code of Civil Procedure. Assuming that an assignee may carry on an action in the name of a dissolved corporation which has lost its capacity, the question here is not that. Here an affirmative action was taken in the name of Mileage under section 685 of the Code of Civil Procedure. That section implies that a showing be made of diligence. It is conceded that at that time Attorney Hatch had no knowledge of the dissolution of Mileage. Here the only showing of diligence was the acts of the attorney for Mileage. Mileage had long since become defunct, and, of course, when it died, the attorney's right to represent it died also. Therefore, neither he nor it could appear in the action, and his acts from the date upon which it became completely defunct could not be considered. Had Macmillan appeared in the proceeding as assignee and given evidence of its affirmative acts, there would have been a different situation. Until a plaintiff with capacity to act appeared in the case, the court had no jurisdiction.

### EFFECT OF APPEAL FROM APRIL 20 ORDER

Plaintiff contends that by appealing from the April 20 order respondent recognized the invalidity of the order of

May 3 setting it aside. This does not necessarily follow. Respondent could have appealed because the time was running out and he feared that the order of June 14 would be appealed by plaintiff. (This order was set aside later by stipulation.) If the order of May 3 was valid, the appeal was an idle act. If the order of May 3 was not valid, and if the order of June 14 did not stand, respondent was protected by his appeal from the order of April 20.

Plaintiff further contends that by the appeal the court lost the power to set aside that order; as it did on December 3. However, a court may set aside a void order at any time. An appeal will not prevent the court from at any time lopping off what has been termed a dead limb on the judicial tree—a void order. As we have held that the order of December 19 is void, the order of April 20 refusing to vacate it could not give it validity. Moreover, as Mileage had no capacity, it had no right to resist the April 20 motion and the court had no jurisdiction to do other than grant it. It is academic whether the order of May 3 vacating the order of December 19, or that portion of the order of December 3 again vacating it, or that portion of the order of December 3 refusing to vacate the May 3 order, is the controlling order.

The appeal of Mileage is dismissed and that portion of the order of December 3 granting respondent's motion to vacate the order of substitution of August 21, 1948, is reversed. In all other respects said order is affirmed, each party to bear his own costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 21, 1950, and appellant's petition for a hearing by the Supreme Court was denied November 16, 1950.