[No. A067744. First Dist., Div. Two. Apr. 15, 1996.]

NOBANTU ANKOANDA, Plaintiff and Respondent, v.
PAULA DEE WALKER-SMITH, Defendant and Appellant.

**COUNSEL**

Douglas N. Akay and Stephanie M. Cooper for Defendant and Appellant.

Timothy J. Ward for Plaintiff and Respondent.

## OPINION

### HAERLE, J.—

### I. INTRODUCTION

This appeal arises from a dispute between second cousins, Paula Dee Walker-Smith (Walker-Smith) and Nobantu Ankoanda (Ankoanda),[1] regarding the ownership of a parcel of real property located at 215 St. Charles Street in San Francisco (the property). Finding mutual mistake in the sequential deeds granting Walker-Smith an interest in the property, the trial court quieted title in Ankoanda and awarded Walker-Smith compensation for improvements and labor in the amount of $25,000 under Civil Code section 1692.

Walker-Smith appeals, alleging numerous errors below. We need not address each of these claims, however, because we conclude that Walker-Smith correctly urges that Ankoanda's complaint was barred by the three-year statute of limitations found in Code of Civil Procedure section 338, subdivision (d).[2] Accordingly, we reverse.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Since we resolve this appeal on statute of limitations grounds, our recitation of the facts is accordingly limited. The bulk of the testimony addressing the issue of the alleged fraud or mistake that induced Ankoanda to execute the deed is therefore omitted from this summary.

In 1974, Ankoanda purchased the property, a two-story residence with an "in-law" unit on the ground floor. Ankoanda occupied the upstairs portion of the property from the time of its purchase until 1976, when she purchased another home in East Palo Alto. Since 1976, she has not lived in the property.

Walker-Smith rented the ground floor unit in 1974. The day after Ankoanda relocated to her new East Palo Alto home in 1976, the property was rendered uninhabitable by fire.

Walker-Smith moved back to the ground floor unit of the property in 1983. When the primary tenant moved out, Walker-Smith then occupied the

---

[1] Prior to 1972, Ankoanda was known as Beverly Ellis.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

entire property. She paid $600 per month in rent and, during her tenancy, made substantial improvements to the property. Walker-Smith also obtained a day-care license for the ground floor of the property in 1984.

During 1986 and 1987, Walker-Smith applied for a grant through the "Larger Family Day Care Habitation Program" (grant program), which was sponsored by the San Francisco Mayor's Office of Community Development.[3] She ultimately obtained an award of $19,500, which was used to improve the property.

The grant program did not require that the applicant own the property to be improved, but it did require the property owner's consent to occupy the property for three years and the owner's execution of a deed of trust in favor of the City. In April 1986, Ankoanda signed an owner consent form and on March 30, 1987, a deed of trust in favor of the city was recorded against the property.

Walker-Smith's and Ankoanda's testimony diverged regarding the origins of the written lease covering Walker-Smith's tenancy. Walker-Smith testified that all of the written leases were entered into in 1986 and backdated for purposes of applying for the grant program. Ankoanda testified that the first written lease was prepared about August 1, 1984. The second written lease was prepared about August 28, 1985, and extended the lease period to August 1, 1989. In response to grant program requirements, a third written lease was prepared in January of 1988, extending the tenancy into 1991.

On May 28, 1986, Ankoanda executed a deed granting tenants in common ownership of the property to Ankoanda, Walker-Smith, and Delma Ellis (Ellis), Ankoanda's mother and Walker-Smith's aunt. Ankoanda gave a copy of the deed to Ellis and later recorded it.

Ankoanda testified that she believed that the transfer to Walker-Smith was required in order for Walker-Smith to receive the grant and that Walker-Smith would reconvey her interest sometime after the grant program was completed. No written agreement ever set forth an agreement regarding future reconveyance, and neither Ankoanda's alleged understanding nor the circumstances of the reconveyance were discussed during the deed's execution.

Ellis and Walker-Smith added their signatures to the owner consent form for the grant program in September of 1986. At that point, Walker-Smith

---

[3]The grant program offered renovation funds and assistance to licensed day-care operators who used the funds to improve their facilities and increase their client capacity. In return, the grant recipient pledged to provide day care for a number of city-mandated, low-income children for a specified period of time, after which the city would forgive the debt.

fully realized the import of the deed and considered herself a property owner. She believed that she shared an equal responsibility for property expenses. Ankoanda continued to pay the mortgage, fire insurance premiums and property taxes, and claimed the income from and depreciation of the property on her income taxes. Smith, however, continuously believed that her rental payments covered her portion of the expenses for the property. In 1986, her rent in fact covered all of the property's expenses and even provided a surplus.

On March 30, 1987, a second grant deed was prepared and executed. It was recorded the next day. The deed superseded the prior deed and created a joint tenancy in the property for Ankoanda, Walker-Smith, and Ellis.

In June of 1989, Walker-Smith's attorney wrote a letter to Ankoanda asserting Walker-Smith's ownership interest in the property pursuant to the grant deeds. This letter left Ankoanda in "shock" and feeling "betrayed." On approximately the same date, Walker-Smith refused to directly discuss the issue of ownership, referring Ankoanda to her attorney.

As a result of the letter and the conversation, in July of 1989, Ankoanda confirmed with the city that it had not required the addition of Walker-Smith's name on the deed for purposes of eligibility for the grant program.

When the written lease between the parties expired in August of 1991, Ankoanda did not raise the rent, despite the fact that she believed the rental value of the property was twice what she was receiving, because the parties "were in dispute at that point."

On June 28, 1993, Ankoanda filed suit against Walker-Smith, the estate of Delma Ellis and all others claiming through Delma Ellis requesting seisen and quiet title of real property. Walker-Smith answered, asserting, among other defenses, that Ankoanda was barred from recovery under the applicable statute of limitations, section 338. Walker-Smith also filed a cross-complaint.

The case was tried to the court sitting in equity. Judgment was entered in favor of Ankoanda on August 23, 1994, and notice of entry of judgment was mailed to the parties by the clerk of the court on August 29, 1994. Walker-Smith filed her timely notice of appeal on October 21, 1994.

### III. Discussion

■ The trial court rejected Walker-Smith's defense that Ankoanda's complaint was barred by the three-year statute of limitations found in section

338, subdivision (d). The trial court instead held that the applicable limitations period was five years as set forth in "either sections 318, 319 or 326 . . . ." The trial court further reasoned that any running of the statute of limitations was tolled until August 1, 1991, because, until that time, Walker-Smith remained a tenant of Ankoanda under a written lease. Citing no authority, the trial court set forth the applicable rule of law as follows: "A landlord is seised and considered in possession of her property through her tenant, therefore, no limitation would commence to run until there was a cessation of the tenancy and an overt act of by [sic] the former tenant against the ownership of the landlord."

While Ankoanda does not explicitly concede the point, nowhere in her brief does she dispute Walker-Smith's contention that the statute of limitations applicable to her complaint is the three-year period for actions based upon fraud and mistake set forth in section 338, subdivision (d), rather than the five-year period set forth in one of the statutes cited by the trial court. There is good reason for this omission. The law is clear that the theory of relief underlying an action for quiet title, in this case fraud or mistake, determines which statute of limitations applies. (See e.g., *Leeper* v. *Beltrami* (1959) 53 Cal.2d 195, 214 [1 Cal.Rptr. 12, 347 P.2d 12]; *Muktarian* v. *Barmby* (1965) 63 Cal.2d 558, 560-561 [47 Cal.Rptr. 483, 407 P.2d 659] (hereafter *Muktarian*).)

A cause of action subject to section 338, subdivision (d), does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (§ 338, subd. (d); see also *Arthur* v. *Davis* (1981) 126 Cal.App.3d 684, 690 [178 Cal.Rptr. 920] [applying accrual clause of statute to quiet title action].) Ankoanda's claim was based upon her alleged belief at the time she deeded the interest in the property to Walker-Smith that, in order to obtain funds from the grant program, Walker-Smith required an ownership interest in the property and that, once the terms of the grant program were concluded, Walker-Smith would reconvey her interest to Ankoanda. The record is crystal clear that Ankoanda knew or should have known facts constituting this alleged fraud or mistake in July of 1989. The previous month, she had received a letter from an attorney retained by Walker-Smith asserting an ownership interest in the property. According to Ankoanda, on July 4, 1989, Walker-Smith "refused [for the first time] to quit deed the property back to [Ankoanda]." By July 10, 1989, Ankoanda had learned from the City of San Francisco that it was not a requirement of the grant program that Walker-Smith's name appear on the deed. Thus, absent some tolling of the statute of limitations, Ankoanda's complaint was time barred when it was filed on June 28, 1993.

Ankoanda contends here, as she did in the trial court, that the statute was tolled because she was at all times in possession of the property. She reasons

that the trial court found that Walker-Smith was her tenant and that a landlord is deemed to have seisen and possession of leased property through her tenant. (See *S. F. Unified Sch. Dist.* v. *San Francisco* (1942) 54 Cal.App.2d 105, 111, 112 [128 P.2d 696].) She then invokes the rule of *Muktarian, supra,* 63 Cal.2d at pp. 560-561. Walker-Smith also contends that case is controlling; we thus discuss it extensively.

In *Muktarian,* Chief Justice Traynor wrote: "Since there is no statute of limitations governing quiet title actions as such, it is ordinarily necessary to refer to the underlying theory of relief to determine which statute applies. [Citations.] In the present case, however, it is unnecessary to determine which statute would otherwise apply, for no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property. [Citations.] In many instances one in possession would not know of dormant adverse claims of persons not in possession. [Citation.] Moreover, even if, as here, the party in possession knows of such a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him. (See *Berniker* v. *Berniker* [1947] 30 Cal.2d [439,] 448 [182 P.2d 557].)" (*Muktarian, supra,* 63 Cal.2d at pp. 560-561.)

A close look at Ankoanda's reasoning reveals its flaw: The "possession" required to toll the statute of limitations must be "exclusive and undisputed." Although *Muktarian* does not explicitly refer to "exclusive and undisputed possession," that type of possession was in fact present there and in the cases relied upon in it. In *Muktarian,* a father deeded property to a son subject to his retention of a life estate. Apparently, the father did not intend to relinquish control of the property until after his death, but never clarified certain mistakes in the deed. The father remained in possession of the property. He sued to quiet title when his son refused to facilitate his plan to sell 52 acres of the property, although the son had previously cooperated in the sale of a much smaller parcel of the deeded property. (*Muktarian, supra,* 63 Cal.2d at pp. 559-560.) The court concluded that, under these circumstances, the father's claim was not barred by the statute of limitations.

This result is consistent with the rule as succinctly explained in one of the cases cited in *Muktarian* (albeit in dicta in the particular case): "The contention that a statute limiting the time for the commencement of an action to set aside a deed to the state for delinquent taxes does not apply to an owner in exclusive and undisputed possession of the property taxed, is largely based on a rule stated to be that a general statute of limitations does not run against such an owner to remove a cloud upon his title. It may be assumed that such is the general rule. [Citations.]" (*Sears* v. *County of Calaveras* (1955) 45

Cal.2d 518, 521 [289 P.2d 425], citing among other cases *Newport v. Hatton* (1924) 195 Cal. 132 [231 P. 987],[4] *Faria v. Bettencourt* (1929) 100 Cal.App. 49, 51-52 [279 P. 679] and *S.F. Unified Sch. Dist. v. San Francisco, supra,* 54 Cal.App.2d at pp. 111, 112.)

Other decisions, not cited in *Sears v. County of Calaveras* but relied upon by the court to support its holding in *Muktarian,* are also consistent with our reading of the latter case. (*Berniker v. Berniker* (1947) 30 Cal.2d 439, 447 [182 P.2d 557] ["sole charge" of property]; *Smith v. Matthews* (1889) 81 Cal. 120, 121 [22 P. 409] [actual possession remained with grantor].)

Since its debut, *Muktarian* has been cited infrequently. None of the cases we have reviewed that do cite it, however, call into question our interpretation of it. Thus, in *Oates v. Nelson* (1969) 269 Cal.App.2d 18 [74 Cal.Rptr. 475], the court held that the statute of limitations did not bar the claim of plaintiffs who " 'have had uncontested and free use of said . . . strip . . . for many years prior to inadvertent conveyance to defendants, and *at all times since said conveyance.'* " (*Id.* at p. 19, italics in original.) Similarly, the Court of Appeals for the Ninth Circuit, in a case reciting its facts sparsely, applied *Muktarian* to permit a bankruptcy trustee to quiet title in a parcel that had been transferred by the debtors to certain family trusts, when the debtors had at all times remained in possession of the property. (*In re Allustiarte* (9th Cir. 1986) 786 F.2d 910, 913.) The only other California case to cite *Muktarian,* declined, for policy reasons, to apply the bar of a statute of limitations to a claim to establish an easement by necessity, reasoning that as in *Muktarian* "there is no reason to put the party to the expense and inconvenience of litigation until the activity adverse to the easement by necessity, threatening to cut it off, occurs [citation]." (*Lichty v. Sickels* (1983) 149 Cal.App.3d 696, 703 [197 Cal.Rptr. 137].)

Interestingly, the Alaska Supreme Court cited *Muktarian* for the proposition that the statute of limitations begins to run in an action for reformation of a deed when the plaintiff has notice of the defendant's intent to repudiate an oral agreement to reconvey the property. (*Straight v. Hill* (Alaska 1981) 622 P.2d 425, 428.)

---

[4]Apparently, the Supreme Court views the *Hatton* decision as supportive of this point. This is sufficient for us. We observe, however, that, in any event, *Hatton* is clearly distinguishable from the case at bench and the other cases cited in *Muktarian.* In *Hatton,* the pertinent issue was whether the applicable statute of limitations had run against a remainderman seeking to establish rights in certain land that had been sold by the life tenant many years previously. The court reasonably concluded that the statute of limitations did not begin to run until "after the death of the tenant for life who has aliened the fee." (*Newport v. Hatton, supra,* 195 Cal. at p. 145.) Until that time, the remainderman has no claim for possession of the property in question.

The parties have cited and we have found no case applying *Muktarian* to an alleged joint ownership situation such as the one presented by the case at bar. In our view, such an omission is because the rule makes little sense in such a context. According to the challenged deeds, which were voidable and not void (see 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 143, p. 356), Walker-Smith and Ankoanda were both record owners of the property. Contrary to the trial court's implicit conclusion and Ankoanda's argument, there is nothing inherently inconsistent in holding both an ownership interest and a tenancy in the same property. (See *Wallace* v. *Daley* (1990) 220 Cal.App.3d 1028, 1039 [270 Cal.Rptr. 85] ["plaintiff's acquisition of a one-third interest in the property did not terminate the rental agreement or her obligations thereunder"].)

First as tenants in common and then as joint tenants, both Walker-Smith and Ankoanda had an equal right to possession of the entire property, but did not have right to the exclusive possession of the property as against each other. (5 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1989) § 12:2, p. 99.) Thus, case law stating the general proposition that a landlord remains seised and possessed of leased property through her tenant as against third parties and/or the tenant is clearly distinguishable from a case like the present one where the occupying tenant claims a joint ownership interest pursuant to a recorded deed and the question is whether the deed should be invalidated. For this reason, Ankoanda's reliance upon *S. F. Unified Sch. Dist.* v. *San Francisco, supra,* 54 Cal.App.2d 105, a case involving an ownership dispute between a landlord and a nontenant third party, does little to advance her claim.[5]

Finally, there is simply no sound policy reason to toll the statute of limitations in this case beyond the time when Ankoanda learned that Walker-Smith was not going to reconvey the portion of the property that had been deeded to her. From that point on, Ankoanda could not claim that any action by Walker-Smith, including the payment of rent and/or the honoring of other terms of the lease, lulled her into believing that Walker-Smith continued to adhere to the bargain as she believed it to be. At that point, Ankoanda knew or should have known that the "expense and inconvenience of litigation" would be necessary to reestablish her exclusive ownership of the property. Ankoanda nevertheless waited almost four years to bring her claim. Her action therefore was time barred and, accordingly, we reverse the judgment.

---

[5]The same can be said for the citation to 43 California Jurisprudence Third, Limitation of Actions, section 85, page 126, which for the most part addresses cases of adverse possession. We note that the following section, section 86, actually purports to address claims of fraud or mistake in an action to recover real property, but fails to even cite *Muktarian*.

## IV. Disposition

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are awarded to Walker-Smith.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied May 10, 1996, and respondent's petition for review by the Supreme Court was denied June 26, 1996. Kennard, J., was of the opinion that the petition should be granted.