Filed 6/9/15  Wells Fargo Bank v. Golding CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| WELLS FARGO BANK, N.A., | |
| Plaintiff and Appellant, | E059892 |
| v. | (Super.Ct.No. RIC1117215) |
| DANE GOLDING et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Dallas Holmes, Judge.

(Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to

art. VI, § 6 of the Cal. Const.)  Affirmed.

Drew M. Taylor for Plaintiff and Appellant.

Law Offices of Peter J. Crosby and Peter J. Crosby for Defendants and

Respondents.

INTRODUCTION

Wells Fargo Bank, N.A., (Wells Fargo) appeals from a judgment in favor of defendants Dane and Michelle Golding following the sustaining of their demurrer to Wells Fargo's second amended complaint without leave to amend. Wells Fargo contends (1) it adequately stated its causes of action for quiet title and declaratory relief; (2) its complaint was not barred by the statute of limitations; and (3) it can amend its complaint to state a cause of action for equitable lien.

We find no error, and we affirm.

FACTS AND PROCEDURAL BACKGROUND

We set forth the underlying facts consistent with the standard that governs our review of a judgment of dismissal entered upon the sustaining of a demurrer: "[W]e assume the truth of all facts properly pleaded by the plaintiff, and those that may be inferred therefrom, as well as relevant facts appearing in exhibits attached to the complaint; we may also consider matters subject to judicial notice." (*Van Horn v. Department of Toxic Substances Control* (2014) 231 Cal.App.4th 1287, 1292.)

In October 2011, Wells Fargo filed a verified complaint against Dane A. Golding, Michelle E. Golding and Harvey D. Golding for quiet title and declaratory relief.[1] Wells Fargo alleged that in August 2007, Harvey acquired real property in Canyon Lake, California, from his wife, Alba Nuvia Golding, as his sole and separate property. Wells

_____

[1] Harvey Golding died in 2013. Because defendants share a common last name, we will refer to them herein by their first names for clarity and convenience, and not intending any disrespect.

2

Fargo's predecessor in interest, World Savings Bank, FAB, (WSB) made a loan to Harvey in the amount of $227,500, secured by a deed of trust on the property. The deed of trust was recorded on September 12, 2007. In the deed of trust, Harvey stated, "I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, *except for those which are of public record*." (Italics added.)

Wells Fargo alleged that the loan was to be secured by the entire property, but either through mistake or inadvertence, a grant deed was recorded against the property on September 11, 2007, conveying title from Harvey to Harvey, Michelle, and Dane. As a result, the loan was secured by only one-third of the property. Wells Fargo attached to the complaint copies of (1) the interspousal grant deed, recorded on September 10, 2007, reflecting the conveyance from Alba to Harvey; (2) the deed of trust; and (3) the grant deed recorded on September 11, 2007.

On September 10, 2012, Dane and Michelle filed a demurrer to the initial complaint on the ground, among others, that Wells Fargo's claims were barred under the applicable three-year statute of limitations.

On October 9, 2012, Stanwich Mortgage Loan Trust, successor in interest to Wells Fargo via assignment dated October 3, 2012, filed a verified first amended complaint for quiet title and declaratory relief, adding the allegation that "Wells Fargo Bank became aware of the defect in its security interest in the Property on around June 10, 2010, after it initiated the foreclosure process on May 25, 2010." The verified first amended complaint

3

also alleged that Dane and Michelle, "in the weeks prior to the Loan, had agreed to allow Harvey . . . to get a $200,000 loan, and secure it with the entire Property. For reasons unknown . . . Harvey . . . instead received the $227,500 Loan, and, because of the mistake described above, it is not adequately secured."

On October 25, 2012, Dane and Michelle filed a demurrer to the first amended complaint on the ground, among others, that the causes of action were facially barred by the statute of limitations. The trial court sustained the demurrer with leave to amend.

On January 4, 2013, a verified second amended complaint was filed. With respect to the failure to discover the purported recording mistake, the complaint alleged, "WSB, Wells Fargo Bank's and Stanwich's predecessor in interest, loaned to Harvey Golding based upon his representation that he was the sole fee simple interest owner of the Property. In fact, prior to obtaining the Loan, Harvey Golding filled out a Uniform Loan Application under penalty of perjury in which he listed himself as the sole prospective borrower. In addition, when Harvey Golding executed the deed of trust he was the sole fee simple interest owner. Even though WSB, Wells Fargo Bank's and Stanwich's predecessor in interest, reviewed a preliminary title report prior to funding the Loan, and even though the preliminary title report confirmed that Harvey Golding was the sole fee simple interest owner, a preliminary title report is not an abstract of title or even a representation of the state of title. A preliminary title report is an offer to issue a title policy pursuant to the terms stated in the preliminary report. Nevertheless, WSB, Wells Fargo Bank's and Stanwich's predecessor in interest, was unaware of any facts prior to the close of the loan that [Harvey] Golding had conveyed part of his interest to others.

4

WSB, Wells Fargo Bank's and Stanwich's predecessor in interest, had no reason to obtain an abstract of title or take any action in which it would require any search of the Property's title, until the loan was in default, when it first discovered the September 11 Grant Deed. Only then did WSB, Wells Fargo Bank's and Stanwich's predecessor in interest, discover that [Harvey] Golding had conveyed part of his interest to others."

On April 22, 2013, Dane and Michelle filed a demurrer to the second amended complaint, again on the ground that the statute of limitations had run, and indicating the complaint failed to allege facts sufficient to invoke the delayed discovery rule.

On May 31, 2013, the trial court took judicial notice of recorded documents regarding the property. The recorded documents showed that Harvey, then a widower, acquired the property by grant deed in December 1975. The grant deed was recorded on February 10, 1976. In January 1976, Harvey transferred the property through a grant deed naming himself, Dane, and Michelle as joint tenants. That grant deed was also recorded on February 10, 1976.

By a grant deed dated August 15, 2007, and executed on August 15 and 21, 2007, Michelle and Dane (as joint tenants) and Harvey and Alba (as trustees of The Golding Family Living Trust dated February 28, 2006), transferred the property to Harvey, a married man as his sole and separate property. The grant deed was recorded on September 10, 2007. On August 15, 2007, Alba executed an interspousal grant deed, granting Harvey the property as his sole and separate property. The interspousal grant deed was recorded on September 10, 2007.

5

On August 15, 2007, Harvey granted a deed of trust to Americahomekey, Inc., to secure a loan in the amount of $200,000. The deed of trust was recorded on September 10, 2007. The deed of trust identified the borrower as "Harvey D. Golding, a married man as his sole and separate property."

By a grant deed dated August 20, 2007, and executed on August 21, 2007, Harvey transferred the property to himself, Michelle, and Dane as joint tenants. The grant deed was recorded on September 11, 2007.

The trial court declined to take judicial notice of a preliminary title report obtained by Wells Fargo's predecessor in interest which indicated that title to the property as of May 9, 2007, was vested in "Michelle E. Golding, a Single Woman and Dane A. Golding, a Single Man, as Joint Tenants and Harvey D. Golding and Alba Nuvia Golding, Trustees of The Golding Family Living Trust dated February 28, 2006."

On August 15, 2013, the trial court sustained the demurrer to the second amended complaint without leave to amend, and the judgment of dismissal was entered accordingly.

Additional facts are set forth in the discussion of the issues to which they pertain.

DISCUSSION

**Statute of Limitations**

Wells Fargo contends the second amended complaint was not barred by the statute of limitations.

To sustain a demurrer based on the statute of limitations, it must appear clearly and affirmatively from the dates alleged in the complaint that the statute has run. (*Roman*

6

*v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 324.)  Wells Fargo's claims are subject to the three-year statute of limitations under Code of Civil Procedure section 338, subdivision (d), which applies to "[a]n action for relief on the ground of fraud or mistake."  (See *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 615 ["The law is clear that the theory of relief underlying an action for quiet title, in this case fraud or mistake, determines which statute of limitations applies"]; *Maguire v. Hibernia S. & L. Soc.* (1944 ) 23 Cal.2d 719, 734 [limitations period applicable to ordinary actions at law should be applied to actions for declaratory relief].)

As noted *ante*, Wells Fargo filed its initial complaint in October 2011.  The events on which it based its claims occurred in September 2007, nearly four years earlier.  Wells Fargo argues, however, that under the delayed discovery rule, its cause of action did not accrue until it discovered or should have discovered, through the exercise of reasonable diligence, all the facts essential to its cause of action.  (*Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 407.)  To invoke the delayed discovery rule, the plaintiff must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.  The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." (*McKelvey v. Boeing North American*, *Inc*. (1999) 74 Cal.App.4th 151, 160, superseded by statute on another ground as stated in *Grisham v. Philip Morris U.S.A.*, *Inc*. (2007) 40 Cal.4th 623, 637, fn .8.)

Under the delayed discovery rule, "constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation (such as public records or corporation books), the statute commences to run." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 659, p. 870.) Another leading commentator has explained, "Constructive notice is not dependent upon whether a subsequent party actually searches the public records. A party may be a bona fide purchaser even though he or she has not personally searched the public records, or has had an agent or third party search the records. The fact that a subsequent purchaser or encumbrancer searches and evaluates the public record through an escrow or title agent does not diminish his or her right to rely on the record title and does not, by itself, impose a duty to investigate beyond the public records unless it has actual, imputed, or implied notice from circumstances other than the record title. Conversely, a *failure* to search does not diminish the effect of the recorded instrument as imparting constructive notice to a person who lacks actual, imputed or implied notice of the instrument." (5 Miller & Starr, Cal. Real Estate (3d ed. 2009) § 11.60, pp. 11-197—11-198, fns. omitted.)

Here, it was undisputed that the grant deed conveying title to Harvey, Dane, and Michelle was recorded before Wells Fargo's deed of trust. Civil Code section 1213 provides, in part, "Every conveyance of real property . . . acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for

record is constructive notice of the contents thereof to subsequent purchasers and mortgagees."

Wells Fargo relies, however, on *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1247 (*Prudential*) for its statement that "we have found no case suggesting the existence of public records precludes the application of the delayed discovery doctrine as a matter of law." In *Prudential*, borrowers sued several lenders for violations of Civil Code section 2941, which requires a lender to record a reconveyance of a deed of trust after the borrower pays off a secured loan and provides a criminal penalty for a lender's failure to do so. (*Id.* at p. 1240.) A majority of the court held that the delayed discovery doctrine could apply because the plaintiffs were entitled to presume the defendants had performed an act required by a penal statute. (*Id.* at pp. 1241, 1248.) *Prudential* is distinguishable because no such presumption applies in the present case.

Here, the recorded documents of which the trial court took judicial notice show that when WSB made the loan to Harvey, record title was in Harvey, Michelle, and Dane, as joint tenants, because, at that time, neither the transfer deed from Michelle and Dane to Harvey nor the reconveyance deed from Harvey to himself, Michelle, and Dane had been recorded. A title search would thus have shown that the loan, made solely to Harvey, was undersecured, and under Civil Code section 1213, Wells Fargo's predecessor in interest had constructive notice of that fact. Moreover, it appears that WSB's escrow agent was aware of the series of transactions, and its knowledge was imputed to WSB. (See, e.g., *In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 440.)

9

We conclude Wells Fargo has failed to show that the discovery rule extended the statute of limitations.

**Possibility of Amending Complaint**

Wells Fargo contends it can amend its complaint to state a cause of action for equitable lien. This court reverses an order sustaining a demurrer without leave to amend if it determines there is a reasonable possibility the pleading can be cured by amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Wells Fargo asserts that it can amend its complaint to allege a separate cause of action for an equitable lien in the amount of $88,671.12, which represents the amount it paid to a prior encumbrancer on the property. Wells Fargo states that in 1998, Harvey and Alba obtained a $100,000 loan secured by a duly recorded deed of trust on the property. (Wells Fargo represents that the 1998 deed was reflected on the preliminary title report, which Wells Fargo requested the trial court to judicially notice. As noted *ante*, the trial court declined to take judicial notice of that document.) Wells Fargo contends the 1998 deed of trust was paid off from the settlement proceeds of the loan made by Wells Fargo's predecessor in interest. A reconveyance of the 1998 deed of trust was recorded on September 21, 2007.

""""One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the

10

holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit." [Citations]' [Citations.] Equitable subrogation thus gives effect to the intentions of the parties." (*Branscomb v. JPMorgan Chase Bank N.A.* (2014) 223 Cal.App.4th 801, 806.)

Here, however, Wells Fargo does not assert that Michelle and Dane were parties to the 1998 deed of trust or that they pledged their two-third joint interest in the property to secure the prior loan. Indeed, Wells Fargo does not assert that Michelle and Dane consented to or were aware of the prior loan. Harvey has since died. Upon the death of a joint tenant who has executed a trust deed on property without the knowledge or consent of the other joint tenants, the surviving joint tenants take the property free of the trust deed. (*Hamel v. Gootkin* (1962) 202 Cal.App.2d 27, 28-30.) Thus, Wells Fargo has not shown that it could amend its complaint to state a valid cause of action.

DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

11