[No. B191049. Second Dist., Div. Eight. Dec. 13, 2007.]

CRESTMAR OWNERS ASSOCIATION, Plaintiff and Respondent, v. WILLIAM STAPAKIS et al., Defendants and Appellants.

COUNSEL

Michael J. Migan for Defendants and Appellants.

Kaiser & Swindells and Eric C. Demler for Plaintiff and Respondent.

OPINION

RUBIN, J.—Hartford Equity and Management Corporation and its president and sole shareholder, William Stapakis, appeal from a judgment quieting title to two parking spaces in respondent Crestmar Owners Association. We affirm.

## FACTS AND PROCEEDINGS

In 1977, appellant Hartford Equity and Management Corporation (Hartford) converted a building in Long Beach into condominiums. After the conversion, the homeowners association for the building's residents, respondent Crestmar Owners Association (Crestmar), assumed management of the property's common areas. The conditions, covenants, and restrictions governing the property (CC&R's) obligated Hartford to transfer parking spaces in the building's garage to anyone who bought a condominium. If any condominiums remained unsold three years after the first unit was purchased, the CC&R's required Hartford to convey all remaining unassigned parking spaces to Crestmar.[1] The first condominium was bought in the late 1970's, meaning Hartford should have transferred the last of any remaining parking spaces no later than the early 1980's. Whether intentionally or inadvertently, Hartford never deeded the building's last two parking spaces to Crestmar.

Although Crestmar could hold unassigned parking spaces for unsold condominiums, no one other than a condominium owner could own a space. Nevertheless, in October 2004, Hartford conveyed to its president and sole shareholder, appellant William Stapakis, the two parking spaces it had not transferred to Crestmar. Upon taking the deeds to the spaces, Stapakis contacted Crestmar and demanded it let him use the spaces for his personal use. He also demanded Crestmar pay him a quarter century's worth of back

---

[1] The pertinent language in the CC&R's stated, "At the time of initial sales of the condominiums [Hartford] shall convey at least one parking stall unit with each residential unit in the deed conveying the condominium. No parking stall unit may be sold to or retained in ownership by a person not an owner of a residential unit in the condominium . . . . Within three years from the date of the close of the sale of the first residential unit in this project, or upon the recorded sale of all residential units, whichever occurs first, [Hartford] shall have transferred all parking stall units to a residential unit owner or he shall deed any remaining units to [Crestmar] . . . ."

rent for its use of the two spaces since the early 1980's. When Crestmar refused his demands, he sued it in small claims court. The record does not reveal the outcome of the small claims lawsuit.

In response to Stapakis's demands, Crestmar filed in January 2005 a complaint in superior court alleging multiple causes of action. In a nutshell, its complaint sought (1) cancellation of Hartford's deeds to Stapakis, (2) enforcement of the equitable servitudes in the CC&R's obligating Hartford to convey the parking spaces to Crestmar, and (3) quiet title to the two spaces in Crestmar. Hartford and Stapakis answered the complaint. Hartford thereafter by stipulation withdrew its answer and Crestmar took its default because the State of California had suspended its corporate charter in 1979 for not paying its state taxes.

Stapakis moved for judgment on the pleadings. He asserted Crestmar's cause of action to enforce the CC&R's accrued in the early 1980's, when Hartford failed to convey the two parking spaces to Crestmar within three years after the first condominium was bought in the late 1970's. Citing a four-year statute of limitations for an action based upon a writing such as the CC&R's, Stapakis argued Crestmar's complaint was more than two decades too late.

The trial court disagreed with Stapakis on when Crestmar's cause of action accrued. The court concluded it arose when Crestmar demanded Hartford convey the parking spaces. The court could not tell from the face of Crestmar's complaint, however, when Crestmar demanded Hartford perform under the CC&R's, and therefore could not determine whether Crestmar's complaint was timely. Therefore, the court granted judgment on the pleadings, but gave Crestmar leave to file an amended complaint. Crestmar filed an amended complaint adding the allegation that Crestmar did not demand Hartford's performance until it filed its complaint in these proceedings.

Stapakis moved for summary judgment. He reiterated his assertion that causes of action based on the CC&R's accrued sometime in the early 1980's. The court denied summary judgment. It found Crestmar's cause of action to enforce a covenant running with the land accrued when Crestmar demanded Hartford's performance, which the court found occurred when Crestmar filed its complaint. Thus the complaint was timely.[2]

The court conducted a one-day bench trial in February 2006. At the end of the trial, the court entered judgment for Crestmar. It cancelled the deeds to

---

[2] The court alternatively held Stapakis was equitably estopped from raising a statute of limitations defense.

the parking spaces from Hartford to Stapakis, and quieted title to the two spaces in Crestmar.[3] This appeal followed.

## DISCUSSION

### 1. *Statute of Limitations*

■ Appellants contend Crestmar's complaint was untimely. The parties agree the statute of limitations for a cause of action based on a writing such as the CC&R's is four years. (Code Civ. Proc., § 337.) They disagree, however, on when the statute of limitations began to run. The court held the statute began running when Crestmar demanded performance, which the court found was Crestmar's filing of its complaint in this case. In support, the court relied on *Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379 [49 Cal.Rptr.2d 166] (*Cutujian*). Appellants contend the court erred because *Cutujian* is distinguishable. We agree *Cutujian* is distinguishable, rendering it inapposite, but we nevertheless hold the court did not err.

■ Cutujian involved performance of a CC&R's covenant not tied to a precise time. In *Cutujian*, the covenant obligated a homeowners association to repair when " 'necessary or appropriate' " hillsides on the subject property. (*Cutujian, supra*, 41 Cal.App.4th at pp. 1382, 1387.) Instead of being linked to any particular time, the "necessary or appropriate" language made the obligation open-ended. The dispute in *Cutujian* arose when a property owner demanded the association repair his property. The association attempted repairs, but did not complete them to the satisfaction of the owner, who sued the association for breaching the covenant. Against a statute of limitations defense asserting the complaint was untimely, the *Cutujian* court found a cause of action to enforce a covenant in a CC&R accrues when a property owner demands the covenant's performance. (*Id.* at pp. 1384, 1387–1388; accord, *World Sav. & Loan Assn. v. Kurtz Co.* (1960) 183 Cal.App.2d 319, 326 [6 Cal.Rptr. 665] [demand for performance necessary when no time attaches to obligation].)

■ Unlike *Cutujian*, the covenant here to convey the parking spaces provided a particular time for performance—one space concurrent with the sale of each condominium and all spaces within three years of the sale of the first condominium, whichever occurred first. We see no lawful basis—and the parties have supplied none—for rewriting the plain language of the CC&R's

---

[3] The court also ordered Crestmar to reimburse Stapakis for back property taxes he paid of a little more than $1,800 after he purported to take title to the spaces, but that payment is not at issue in this appeal.

to insert as an additional condition to Hartford's performance that Crestmar must expressly demand the deed to the parking spaces before Hartford is obligated to transfer them. Although we find the court's reasoning was mistaken, its conclusion was correct. The complaint was timely because the statute of limitations for an action to quiet title does not begin to run until someone presses an adverse claim against the person holding the property. (*Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560 [47 Cal.Rptr. 483, 407 P.2d 659] (*Muktarian*); see also *Smith v. Matthews* (1889) 81 Cal. 120, 121 [22 P. 409]; 12 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 34:107; 53 Cal.Jur.3d (2004) Quieting Title, § 34, pp. 397–398.) *Muktarian* discusses that rule.

In *Muktarian*, a father deeded land to his son upon the father's second marriage so that the father's new wife would not inherit the property. Despite transferring title to the land, the father kept a life estate and continued to live on the property, with the implied understanding that he retained control over it. When the father at a later time tried to sell some of the property, the son would not sign the grant deed. The father therefore sued the son to quiet title. (*Muktarian, supra*, 63 Cal.2d at p. 560; see also *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 616 [52 Cal.Rptr.2d 39].) Holding the father's complaint was timely, the Supreme Court stated, "no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property." (*Muktarian, supra*, at p. 560, fn. omitted.)

Appellants contend *Muktarian*'s progeny requires respondent to have "exclusive and undisputed" possession of the parking spaces to prevent the accrual of respondent's cause of action. Appellants discern that rule from their reading of *Ankoanda v. Walker-Smith, supra*, 44 Cal.App.4th 610. We find appellants' reliance unpersuasive.

Nobantu Ankoanda owned a building she rented to her cousin, Paula Walker-Smith, in which the cousin wanted to open a governmentally subsidized daycare center. Ankoanda mistakenly believed her cousin needed to have an interest in the building in order to qualify for the governmental funding. (*Ankoanda v. Walker-Smith, supra*, 44 Cal.App.4th at p. 613.) Ankoanda therefore granted a deed to herself and her cousin as joint tenants.[4] (*Id.* at pp. 613–614.) Ankoanda believed her cousin, who remained her tenant in the building, would reconvey the building to her when the public subsidy ended. (*Id.* at p. 613.) Instead, the cousin realized "the import of the deed and considered herself a property owner." (*Id.* at p. 614.)

After being added to the grant deed, the cousin wrote to Ankoanda proclaiming the cousin's ownership interest in the building. Ankoanda waited

---

[4] Ankoanda also included her mother on the deed, but her mother's interest did not affect the *Ankoanda* court's analysis or ours.

four years to take legal action against her cousin to quiet title. The gravamen of her claim was she made her cousin a joint tenant based on either her cousin's fraud or her own mistake about the requirements for the daycare center to receive funding. (*Ankoanda v. Walker-Smith, supra*, 44 Cal.App.4th at p. 615.)

The cousin argued the complaint was untimely because Ankoanda had known about the cousin's ownership claim to the property for four years, but a three-year statute of limitations applied to actions based on fraud or mistake. (Code Civ. Proc., § 338.) Ankoanda asserted her complaint was timely because *Muktarian* established that the statute of limitations to quiet title did not begin to run while the plaintiff seeking to quiet title possessed the property. (*Ankoanda v. Walker-Smith, supra*, 44 Cal.App.4th at pp. 615–616.) As a landlord renting the building to her cousin, Ankoanda noted the law deemed her to be in "possession" of the building through her cousin, who despite being named on the deed, remained a tenant. (*Id.* at p. 618 [cousin's presence on deed does not preclude her from being a tenant because the positions are not incompatible].)

The *Ankoanda* court held *Muktarian* applied only when a plaintiff's possession of property was " 'exclusive and undisputed.' " (*Ankoanda v. Walker-Smith, supra*, 44 Cal.App.4th at p. 616.) Finding Ankoanda's possession satisfied neither criteria, the court held the statute of limitations began to run when Ankoanda received her cousin's letter. Accordingly, Ankoanda's complaint was one year too late when she filed it four years after receiving the letter.

We find *Ankoanda* inapt. The *Ankoanda* court's gloss of "exclusive and undisputed" possession distinguished the unusual facts before it from the very different circumstances in *Muktarian*, where the father neither moved off his property nor gave up its control after granting title to his son. As the *Ankoanda* court explained, "Although *Muktarian* does not explicitly refer to 'exclusive and undisputed possession,' that type of possession was in fact present there and in the cases relied upon in it." (*Ankoanda v. Walker-Smith, supra*, 44 Cal.App.4th at p. 616.) The *Ankoanda* court held *Muktarian* did not cover Ankoanda against her cousin, who physically occupied the building and was ostensibly a joint owner. Thus, Ankoanda did not have exclusive possession of the building. (*Id.* at p. 618.) The *Ankoanda* court stated, "The parties have cited and we have found no case applying *Muktarian* to an alleged joint ownership situation such as the one presented by the case at bar. In our view, such an omission is because the rule makes little sense in such a context. . . . Walker-Smith and Ankoanda were both record owners of the property." (*Id.* at p. 618.)

We hold *Ankoanda*'s refinement of *Muktarian* does not apply here because, when the concepts are properly understood, Crestmar had exclusive and undisputed possession of the parking spots. In the quarter century before Crestmar filed its lawsuit to quiet title, only Crestmar (and possibly unidentified designees) occupied and possessed the spaces, using them to store a waste bin and perhaps for temporary parking. Appellants never used the spaces during that time. Indeed, appellants did not even stake a claim to the spaces until 2004. Appellants contend they nonetheless "possessed" the parking spaces because they had kept title to them since the 1980's. *Muktarian* illuminates, however, that title does not equal possession. In *Muktarian*, the son had title but the statute of limitations on the father's quiet title action did not run because the father retained possession by remaining on the property.

 In addition to Crestmar's possession being exclusive, we find it was also undisputed. Appellants contend possession was disputed, and that they were doing the disputing. Their contention is unavailing, however, because "undisputed" can only sensibly mean the absence of a dispute before the present controversy and attendant lawsuit arose. "Undisputed" cannot plausibly mean no dispute at any time, because a lawsuit presupposes a dispute. Hartford's attempted interpretation of undisputed—no dispute by anyone at anytime—means no property subject to quiet title litigation could satisfy *Muktarian*, making *Muktarian*'s statute of limitations rule illusory. We, of course, try to avoid reading cases, particularly our Supreme Court's decisions, in a way that renders their holdings meaningless.

## 2. *Hartford's Default*

The State of California suspended Hartford's corporate charter in 1979 for not paying its taxes. Hartford concedes that as a suspended corporation, it had no right to prosecute or defend itself in this lawsuit. (*Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361, 1365 [64 Cal.Rptr.2d 4].) Accordingly, after filing its answer and cross-complaint below, Hartford stipulated in August 2005 to their withdrawal. The court entered Hartford's default in September 2005, and included Hartford in its judgment against Stapakis after the trial between him and Crestmar.

 California reinstated Hartford's corporate charter in March 2006 when Stapakis paid the corporation's back taxes. Following reinstatement, Hartford moved to set aside its default. (Code Civ. Proc., § 473, subd. (d).) Hartford's argument for vacating its default rested on Crestmar's having failed to serve its amended complaint on Hartford before trial. According to Hartford, Crestmar had been obligated to serve the amended complaint because the amendments made material changes to the original complaint. When amendments to a complaint contain substantive changes, Hartford

notes, a defaulting defendant against whom the court has not yet entered judgment has the right to appear in the action to answer the amended complaint. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1744 [33 Cal.Rptr.2d 391]; *Ford v. Superior Court* (1973) 34 Cal.App.3d 338, 342 [109 Cal.Rptr. 844]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 6:698, p. 6-174 et seq.; 40A Cal.Jur.3d (2006) Judgments, § 32, p. 64.) The trial court denied the motion to vacate because it found no "material difference" between the allegations of the original and amended complaints.

Hartford contends the court erred in finding the amended complaint contained no substantive changes. It seeks support for its contention principally from the court's rulings on Stapakis's motions for judgment on the pleadings and summary judgment. Hartford notes that the court granted judgment on the pleadings (albeit with leave to amend) on the ground the complaint was time-barred, but found the lawsuit was timely when it denied summary judgment after Crestmar amended its complaint. Hartford reasons amendments to a complaint that snatch victory from the jaws of defeat must be material. Hartford additionally argues the amendments were material because, as Hartford interprets the record, they triggered the court's conclusion that appellants were equitably estopped from asserting the statute of limitations against Crestmar.

We find that even if we assume for purposes of this appeal that Crestmar's amendments were substantive, Hartford's assignment of error fails because it cannot show that its not being served a copy of the amended complaint prejudiced it. (*Butler v. Roma-Lind, Inc.* (1961) 190 Cal.App.2d 861, 864–865 [12 Cal.Rptr. 371] [court's error in not finding amendments were not substantive does not make judgment void].) First, for all intents and purposes, Stapakis *was* Hartford. He was Hartford's president and sole shareholder, and the record does not show Hartford under anyone's control other than his. Stapakis testified at trial about Hartford's conversion of the building into condominiums, his discovery that Hartford had not conveyed the two parking spaces, and his conduct preceding the lawsuit. Hartford does not identify any witness or evidence it would have offered beyond what Stapakis put forth if it had participated in the trial. Given that Stapakis was Hartford's alter ego (see discussion below) and he had himself received a copy of the amended complaint, Hartford cannot show prejudice from not having been served its own copy of the amended complaint.

3. *Conveyance of Parking Spaces to Crestmar*

After the court cancelled the deeds to the two parking spaces from Hartford to Stapakis, it ordered appellants to convey the spaces to Crestmar. Appellants contend the court erred in believing their sole lawful course was to deed the spots to Crestmar. They argued they also had the right to transfer

the parking spots to condominium owners of their selection. In support, they cite the following language from the CC&R's: "Within three years from the date of the close of the sale of the first residential unit in this project, or upon the recorded sale of all residential units, whichever occurs first, the developer shall have transferred all parking stall units to a residential unit owner or he shall deed any remaining units to [Crestmar] . . . ."

■ Appellants offer no argument to support their contention other than to point to the language from the CC&R's. They cite no legal authority to support their contention that the court erred. Furthermore, the language was in evidence before the court, and they cite nothing from the record showing the court arbitrarily disregarded it. We need not address an issue unsupported by argument, legal authority, and evidence, and therefore pass on appellants' contention.

### 4. *Piercing Hartford's Corporate Veil*

Stapakis was Hartford's sole shareholder and president, and the court found he "dominated" the company and intentionally disregarded its corporate form. Stapakis had paid Hartford's back taxes from his own bank account to revive Hartford solely to convey the parking spaces from the corporation to himself, and for which he gave the corporation nothing in return. Deeming it "difficult to find any distinction" between Hartford and Stapakis, the court concluded Stapakis was Hartford's alter ego.

■ Appellants note that piercing the corporate veil requires bad faith by the corporate alter ego. (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838 [26 Cal.Rptr. 806].) They contend the court's unstated purpose in piercing Hartford's corporate veil was to allow the court to order Stapakis to pay Crestmar's attorney's fees of more than $20,000. In the purported absence of Stapakis's bad faith, they urge us to reverse the trial court for piercing the corporate veil for the improper purpose of awarding fees.

Appellants do not support with any record citations their assertion that the court's hidden desire to award Crestmar its fees motivated the court to pierce Hartford's corporate veil. To the contrary, appellants ignore that the court found Stapakis abused Hartford's corporate form. Under the CC&R's, Hartford was to hold the parking spaces until it transferred them to Crestmar or a condominium owner; the CC&R's gave Stapakis no colorable claim to the spaces. Nevertheless, as Hartford's president Stapakis deeded the parking spots to himself, and without paying for them. The court concluded, "If the court were to respect the corporate form, it would work an injustice . . . ." Because appellants do not address the facts in the record underlying the court's fear of perpetrating an injustice if it did not pierce Hartford's corporate veil, their contention that improper motives animated the court fails.

## DISPOSITION

The judgment is affirmed. Respondent to recover its costs on appeal.

Cooper, P. J., and Flier, J., concurred.