Filed 3/21/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELEANOR LICENSING LLC et al., <br><br>     Plaintiffs and Respondents, <br><br>     v. <br><br> CLASSIC RECREATIONS LLC et al., <br><br>     Defendants and Appellants. | B275429 and B279238 <br><br> (Los Angeles County Super. Ct. No. EC062924) |

    APPEALS from judgment of the Superior Court of Los Angeles County. William D. Stewart, Judge. Reversed in part and affirmed in part.

    Haight Brown & Bonesteel, Bruce Cleeland, William O. Martin, Jr., Vangi M. Johnson and Kristian Moriarty for Defendants and Appellants Classic Recreations, LLC, T&D Motor Company, Jason Engel and Tony Engel.

Morris Polich & Purdy , David L. Brandon, Neda Cate; Greines, Martin, Stein & Richland, Timothy T. Coates and Jonathan H. Eisenman for Plaintiffs and Respondents Eleanor Licensing, LLC and Denice Shakarian Halicki.

_____

Following a four-day bench trial, the court entered judgment in favor of Eleanor Licensing LLC and Denice Shakarian Halicki and against Classic Recreations, LLC, T&D Motor Company, Jason Engel and Tony Engel (collectively Classic), ordering that Eleanor Licensing retain possession of a vehicle identified as "Eleanor No. 1," which had been manufactured by Classic pursuant to a licensing agreement between the parties; quieting title to the vehicle in Eleanor Licensing; directing Classic to perform according to the terms of the licensing agreement and transfer legal title to Eleanor No. 1 to Eleanor Licensing; and awarding damages of $6,657.75 and attorney fees of $176,050.  On appeal Classic contends the licensing agreement was unenforceable due to lack of consideration at the time of execution, the governing statutes of limitation barred Eleanor Licensing and Halicki's claims, and the findings that Jason Engel and Tony Engel are the alter egos of Classic Recreations and T&D Motor are not supported by substantial evidence.  We reverse the judgment to the extent it is based on Eleanor Licensing and Halicki's causes of action for breach of contract, as well as the court's alter ego findings, and otherwise affirm the judgment and postjudgment order.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The* Gone in 60 Seconds *Films and the November 1, 2007 License Agreement*

The 1974 motion picture Gone in 60 Seconds was written, directed and produced by H.B. "Toby" Halicki, who also starred in the film.[1] The movie featured a yellow 1971 Fastback Ford Mustang, code named "Eleanor." H.B. Halicki died in 1989 while filming Gone in 60 Seconds 2. His widow, Denice Shakarian Halicki, acquired intellectual property rights relating to "Gone in 60 Seconds" and "Eleanor" from H.B. Halicki's estate.

A 2000 remake of Gone in 60 Seconds, released by Hollywood Pictures, a division of Walt Disney Company, pursuant to rights granted by Denice Shakarian Halicki in May 1995, starred Nicolas Cage and Angelina Jolie. Jerry Bruckheimer produced the remake; Halicki was an executive producer. The 2000 motion picture featured a customized 1967 Fastback Ford Mustang, which was also named "Eleanor." The vehicle was sometimes (erroneously) referred to in the film as a 1967 Shelby GT-500. In July 2007 Hollywood Pictures/Disney executed a quitclaim to confirm that Halicki retained the merchandising rights to "Gone in 60 Seconds" and "Eleanor."

Halicki formed Eleanor Licensing in 2007 and on October 31, 2007 granted the company a nonexclusive license to her intellectual property rights, merchandising rights, trademarks and copyrightable material relating to "Gone in 60 Seconds" and "Eleanor." As of November 1, 2007 Eleanor

---

[1] Our factual summary is based on the findings set forth in the trial court's statement of decision, which, except where noted, are undisputed on appeal.

3

Licensing entered a license agreement with T&D Motor and Classic Recreations granting T&D Motor and Classic Recreations the right to use intellectual property rights, trademarks and copyrightable material relating to "Gone in 60 Seconds" and "Eleanor" to manufacture and sell 300 restored 1971, 1972 and 1973 Fastback Ford Mustangs fitted and detailed to replicate in appearance the 1974 Eleanor and 1,000 restored 1967 and 1968 Fastback Ford Mustangs fitted and detailed to replicate in appearance the 2000 Eleanor.

Pursuant to the license agreement T&D Motor and Classic Recreations agreed to pay Eleanor Licensing a one-time fee of $300,000, plus a royalty for each vehicle sold in accordance with a schedule set forth in the agreement (but no less than 15 percent of each vehicle's sale price).[2] Paragraph 9.3 of the license agreement further provided, "Licensee agrees at Licensee's expense to give Licensor Number '1' unit, Number '48' unit and Number '60' unit of the original 'Gone in 60 Seconds' Eleanor vehicle and Number '1' unit, Number '47' unit and Number '60' unit of the Remake 2000 Eleanor vehicle.  [¶]  (a) Licensor agrees that the aforesaid samples of the Licensed Merchandise may be used by Licensee in the promotions and car events with Licensor's approval and will be fully insured during such use and during the transportation to and from such event."

Paragraph 14.1, "Licensor's Warranty," part of the section of the agreement entitled Warranties, Representations and Indemnification, provided, "Licensor represents and warrants that it has the right to enter into this Agreement:  Should any

---

[2]     Classic eventually sold replicas for approximately $2.7 million and paid Eleanor Licensing $340,000 in royalties.

4

third party assert a claim, demand, or cause of action against Licensee contesting Licensor's ownership of Licensed Properties in relation to this Agreement, Licensor shall undertake and conduct the defense of any such claim, demand or cause of action."

Paragraph 16.4(b) provided, in part, "Licensee is responsible for any and all legal fees, collections costs, and/or court costs incurred by Licensor in securing a remedy for any breach of this Agreement by Licensee . . . ." Paragraph 23.5 required all disputes to be resolved by "binding, mandatory arbitration subject and pursuant to the rules and procedures of the American Arbitration Association."

2. *Delivery of the Sample Car*

The Number 1 unit of the 2000 Eleanor replica described in the licensing agreement (Eleanor No. 1 or the sample car) was constructed in Yukon, Oklahoma, Classic's place of business, and moved from there to Halicki's residence in February 2008.[3] Apparently neither license plates nor title documents were delivered with the vehicle. On September 16, 2009 Michael Leone, a consultant working with Halicki, emailed Jason Engel to "remind you to please find and send Denice's Eleanor title with

---

[3] At times in the trial court Classic maintained this vehicle was a prototype, not one of the sample cars described in paragraph 9.3 of the license agreement. The trial court found Jason Engel had "deliberately testified untruthfully" on this point and, as a result, "determine[d] that his testimony on other facts is not credible." On appeal Classic does not reiterate its claim the vehicle delivered to Halicki in February 2008 was not a sample car to which she was entitled under the terms of the license agreement.

5

her license plate." When the license plate, but not the title document, was sent, Leone again emailed Jason Engel, noting "Denice's title to Eleanor . . . wasn't in the fedex [*sic*] with Eleanor's License plate (tag). What happened? Please check into this." Jason Engel responded, "Mike it should have been. I'll find it and send it out."

       3. *The Shelby Litigation*

      In April 2004 the United States Patent and Trademark Office issued a certificate of registration to the Carroll Hall Shelby Trust (Shelby) for the trademark "Eleanor" for use with automobiles and structural parts of automobiles. Shelby thereafter licensed Unique Motorcars, Inc. to use the trademarks "Shelby GT-500" and "Eleanor" in connection with the manufacture and sale of vehicles and merchandise relating to any 1960's Shelby automobiles. Unique then began manufacturing and selling vehicles that resembled the 2000 remake version of Eleanor, which, as discussed, had been referred to in the movie as a 1967 Shelby GT-500. In May 2004 Halicki sued Unique and Shelby for copyright infringement, common law trademark infringement, unfair competition and other related torts. Halicki also sought cancellation of Shelby's registration of the "Eleanor" mark.

      The Engels were aware of the Shelby litigation when they were negotiating the November 1, 2007 license agreement. Paragraph 11.5 of the agreement stated, "Shelby Matter. Licensor has advised Licensee that Licensor and related parties are currently involved in litigation with Carroll Shelby, Unique Performance, Steve Sanderson and related entities (collectively 'Shelby') with respect to the alleged infringement by Shelby of

6

certain intellectual property rights relating to the Eleanor vehicle from the 'Gone in 60 Seconds' films."

In December 2008, after Classic had delivered Eleanor No. 1 to Halicki, Shelby filed its own federal court trademark infringement action against Classic Recreations, Halicki and others. All disputes involving Shelby and the identification of the 2000 Eleanor as a 1967 Shelby GT-500 were eventually settled in 2009. As part of the settlement, Shelby abandoned any claim to the intellectual property rights to "Eleanor" and on December 18, 2009 assigned to Halicki its entire interest and goodwill in the "Eleanor" registered mark.

4. *Termination of the License Agreement and Classic's Demand Letter*

On October 16, 2009, shortly after the email exchange between Jason Engel and Leone regarding the title document to Eleanor No. 1, Classic terminated the license agreement. A month later, in a letter from counsel dated November 20, 2009, Classic asserted claims against Eleanor Licensing under the license agreement, stating, "As a result of the settlement of the lawsuit brought by Carroll Shelby, et al. against Denice Shakarian Halicki, et al., and other facts, it is clear that Eleanor Licensing LLC did not have the rights it claimed to have had relative to the automobiles that were manufactured by Classic under the terms of the Agreement . . . ." The letter continued that Classic had suffered damages as a consequence of Eleanor Licensing's wrongful actions, including "the licensing fees and royalties paid by T&D and Classic to Eleanor Licensing LLC under the terms of the Agreement [and] the 'Number 1 Unit Remake 2000 Eleanor vehicle' given to Eleanor Licensing LLC under the terms of the Agreement . . . ." The letter offered to

7

settle the claims for $640,000 and "return of the 'Eleanor' automobile." The penultimate paragraph of the letter declared, "[B]ecause the 'Eleanor' automobile which was manufactured by Classic and which is in your possession remains titled in Classic's name, you will not be able to obtain insurance on it. The vehicle is not being insured by Classic and demand is hereby made upon you not to drive the vehicle."

Counsel for Halicki responded to the November 20, 2009 letter, describing the claims asserted as "frivolous and without any foundation whatsoever" and threatening an action for malicious prosecution against lawyer and clients if Classic initiated a lawsuit.

5. *Disputed Ownership and Possession of the Sample Car*

Classic did not sue Eleanor Licensing for allegedly misrepresenting its rights to "Gone in 60 Seconds" and "Eleanor" in the November 1, 2007 license agreement. However, in May 2014 Jason Engel petitioned for a writ of replevin in Oklahoma state court seeking recovery of the sample car, naming as defendant Fusion Motor Sports, Inc., which Eleanor Licensing had licensed to build Eleanor replicas and which was displaying the sample car in its Southern California showroom. A copy of a State of Oklahoma certificate of title, naming Classic Recreations LLC as owner of the vehicle, was attached as Exhibit A to the verified petition.[4] The Oklahoma state court

---

[4] While Classic's appeals were pending in this court, Eleanor Licensing and Halicki moved to dismiss the appeals pursuant to the disentitlement doctrine, contending the photocopy of the certificate of title presented to the Oklahoma state court and thereafter used by Classic during trial of this action had been reproduced in a manner that failed to include the word "Denice"

8

issued a prejudgment order of restraint based on the verified petition on May 23, 2014 and an order of delivery on June 26, 2014.

After filing the Oklahoma replevin action, Jason Engel contacted the Los Angeles Police Department and reported that he owned the sample car, which he had loaned out years earlier for promotional use.  He claimed the car had then disappeared.  A detective with the LAPD automobile task force received a copy of the Oklahoma title document but also learned there was a dispute as to the vehicle's ownership.  The sample car was seized from the Fusion showroom, impounded and then ultimately released pursuant to stipulation to Eleanor Licensing and Halicki, who paid storage fees of $6,657.75.

6. *Halicki and Eleanor Licensing's Lawsuit*

On August 15, 2014 Eleanor Licensing and Halicki filed this lawsuit to recover possession of, and legal title to, Eleanor No. 1.  Their complaint alleged eight causes of action: breach of contract, breach of contract implied by conduct, breach of implied covenant of good faith and fair dealing, declaratory relief, return of personal property, quiet title, injunctive relief and specific performance.

The gravamen of the first three, contract-based causes of action is that Classic breached the agreement between the parties (either the license agreement or an implied-in-fact

---

handwritten in pencil on the top margin of the document. Eleanor Licensing and Halicki have also moved for this court to take evidence on appeal, presenting the declaration of a forensic examiner who opined the pencil notation "Denice" had been on the original title document since late 2008.  Both motions are denied.

9

contract) by attempting to gain possession of the sample car. The eighth cause of action for specific performance, also based on the license agreement, alleges that Halicki is entitled, pursuant to paragraph 13.2 of the agreement, to a court order requiring Classic to transfer title to Eleanor No. 1 to her and to execute all documents necessary to accomplish that task.[5] The declaratory relief cause of action alleges an actual controversy concerning the parties' respective rights to Eleanor No. 1: Eleanor Licensing and Halicki claim they own Eleanor No. 1 free and clear of any express or implied interest of Classic; Classic claims it has an interest in Eleanor No. 1 as a result of holding title to the vehicle.

The fifth cause of action for return of personal property incorporates by reference the allegations in all the prior paragraphs in the complaint, seeks return of the sample car and alleges Classic has damaged Eleanor Licensing and Halicki by having Eleanor No. 1 taken from their possession, custody and control. The quiet title cause of action seeks to quiet title to Eleanor No. 1 solely in the name of Halicki as of the date Classic gave the vehicle to Halicki in February 2008.[6] The seventh cause of action requests injunctive relief restraining Classic from interfering with Eleanor Licensing and Halicki's merchandising rights to "Eleanor," including their rights to the use and quiet enjoyment of Eleanor No. 1.

---

[5] The court permitted Eleanor Licensing and Halicki to amend the complaint to conform to proof to allege title should be transferred to both plaintiffs, not just Halicki.

[6] The amendment to conform to proof also modified the quiet title cause of action to include Eleanor Licensing, as well as Halicki.

10

The complaint alleged in its description of the parties that Jason Engel was the co-owner of Classic Recreation and T&D Motor and the alter ego of both companies and similarly that Tony Engel, Jason's father, was co-owner and alter ego of both Classic Recreation and T&D Motor.

7. *The Trial Court's Decision in Favor of Eleanor Licensing and Halicki and Postjudgment Award of Fees*

The case was tried before the court over four days in February 2015.  The court issued a 10-page tentative decision in September 2015, ruling in favor of Eleanor Licensing and Halicki on all causes of action, including a finding that Classic had breached the license agreement by failing to transfer title to the sample car to Eleanor Licensing.  Following Classic's request for a statement of decision, the court entered a 32-page statement of decision in February 2016 (adopting Eleanor Licensing and Halicki's proposed statement of decision after overruling Classic's objections).

In its statement of decision the court rejected Classic's argument, predicated on Shelby's claim to certain "Eleanor" trademark rights, that Eleanor Licensing did not have the legal authority to license all the rights identified in the November 1, 2007 license agreement.  Then, finding that Classic stood in a fiduciary relationship with Eleanor Licensing and Halicki with respect to delivery of title to the sample car, the court ruled the delayed discovery rule articulated by this court in *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805 applied and Classic's breach of the license agreement had occurred in secret, so that the limitations period for Eleanor Licensing and Halicki's claims did not begin to run until the sample car was seized and impounded by the LAPD at the urging of Classic.  The court also

11

found that Jason Engel and Tony Engel were the alter egos of Classic Recreations and T&D Motor.

In its Judgment, entered April 5, 2016, the court ordered that Eleanor Licensing retain possession of Eleanor No. 1, quieted title to the vehicle to Eleanor Licensing, and ordered Classic Recreations, T&D Motor, Jason Engel and Tony Engel to specifically perform their duties according to the terms of the license agreement and transfer full title to the sample car to Eleanor Licensing and Halicki.  Additionally, the court issued a permanent injunction requiring Classic Recreations, T&D Motor, Jason Engel and Tony Engel to transfer title to the sample car to Eleanor Licensing and Halicki and precluding them from transferring title to anyone other than Eleanor Licensing and from seeking possession of, or harming, the sample car.  Eleanor Licensing and Halicki were awarded damages of $6,657.75, plus prejudgment interest of $887.70, jointly and severally from all defendants.  Finally, the court quieted title to the sample car in Eleanor Licensing.

Following entry of judgment Eleanor Licensing and Halicki moved for an award of attorney fees and costs pursuant to paragraph 16.4 of the license agreement and Civil Code section 1717.  The court granted the motion in part, awarding Eleanor Licensing attorney fees of $176,050 in a postjudgment order dated August 23, 2016, rather than the $308,969.50 that had been requested.

Classic filed a timely notice of appeal from the judgment (case no. B275429) and a separate timely appeal from the postjudgment attorney fee order (case no. B279238).

12

**CONTENTIONS**

Classic contends that, because Classic Recreations was named as owner of the sample car in the certificate of legal title issued by the State of Oklahoma, it was presumed to be the owner of full beneficial title pursuant to Evidence Code section 662[7] and that Eleanor Licensing and Halicki failed at trial to meet their burden of overcoming the presumption. Specifically, Classic asserts Eleanor Licensing did not convey the trademark rights to "Eleanor" in the November 1, 2007 license agreement, resulting in a failure of consideration for that agreement and invalidating any rights Eleanor Licensing and Halicki assert under its terms. Classic also contends the statute of limitations barred the various claims asserted by Eleanor Licensing and Halicki in their complaint and the findings that Jason Engel and Tony Engel are the alter egos of Classic Recreations and T&D Motor are not supported by substantial evidence.[8]

---

[7]     Evidence Code section 662 provides, "The owner of the legal title to property is presumed to be the owner of the full beneficial title. The presumption may be rebutted only by clear and convincing proof."

[8]     Although Classic separately appealed the postjudgment order awarding attorney fees, in its briefs in this court it argues only that, if we reverse the judgment in favor of Eleanor Licensing and Halicki in its entirety, the award of attorney fees and costs to them as prevailing parties should also be reversed and, alternatively, if we reverse the court's alter ego findings but otherwise affirm the judgment, we should also reverse the award of attorney fees and costs against Jason Engel and Tony Engel in their individual capacities. Any other challenge to the ruling has been forfeited. (See, e.g., *Tiernan v. Trustees of Cal. State*

13

**DISCUSSION**

1. *The November 1, 2007 License Agreement Is Supported by Adequate Consideration*

Emphasizing the 2004 federal registration of Shelby's "Eleanor" trademark for "automobiles, engines for automobiles, and structural parts for automobiles" and the statutory presumption of its validity (15 U.S.C. § 1115(a)),[9] Classic argues Eleanor Licensing failed at trial to demonstrate its ownership of a prior use common law trademark to "Eleanor" for those items and, therefore, did not establish it owned the rights it purportedly licensed to Classic in November 1, 2007. Classic also asserts Shelby's December 2009 assignment to Halicki of its federally registered trademark as part of the settlement of the Shelby litigation confirmed that Eleanor Licensing could not convey a license to use the trademark in November 2007.

Classic's argument is doubly flawed. First, Halicki testified concerning her late husband's commercial exploitation of the

_____

*University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.)

[9] Title 15 United States Code section 1115(a) provides that federal registration of a trademark "shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b), which might have been asserted if such mark had not been registered."

14

"Eleanor" and "Gone in 60 Seconds" marks following the release of the first film, as well as the marketing activities surrounding and subsequent to the release of the 2000 remake. The trial court found this evidence established Eleanor Licensing and Halicki's ownership of rights in the "Eleanor" trademark (that is, a common law trademark) sufficient to authorize the license for use of the mark by Classic. That finding is amply supported by substantial evidence. (See *Feresi v. The Livery, LLC* (2014) 232 Cal.App.4th 419, 424 [testimony of a single witness is sufficient to constitute substantial evidence]; *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613 [same].)

Second, evidence at trial, as well as the license agreement itself, demonstrated that Classic was fully aware of Shelby's 2004 federal trademark registration of "Eleanor" and the litigation initiated by Halicki concerning its validity. In fact, trial testimony disclosed that Leone, on behalf of Eleanor Licensing, had advised the Engels to investigate ownership of the intellectual property covered by the license agreement before completing the transaction, which they did. In addition, Eleanor Licensing warranted that it had the right to enter into the license agreement and agreed to defend Classic in any third-party infringement action brought against it for its use of the intellectual property being licensed. Thus, even if ownership of the "Eleanor" trademark was legitimately disputed by Shelby, Eleanor Licensing and Halicki provided sufficient consideration to Classic by giving Classic what it bargained for, licensing the rights they had (which included their undisputed copyright interests in "Eleanor" and "Gone in 60 Seconds," as well as their trademark rights) and agreeing to protect Classic from infringement claims. (See *San Diego City Firefighters, Local 145*

15

*v. Board of Administration Etc.* (2012) 206 Cal.App.4th 594, 619 ["'[a] written instrument is presumptive evidence of a consideration' (Civ. Code, § 1614), and in any event all the law requires for sufficient consideration is the proverbial 'peppercorn'"].) There was no failure of consideration.

    2. *The Contract-based Claims, to the Extent Otherwise Valid, Are Barred by the Statute of Limitations; the Causes of Action for Return of Personal Property and Quiet Title Were Timely Filed*

    a. *The contract claims*

Classic terminated the November 1, 2007 license agreement on October 16, 2009. At that point the sample car was in Halicki's possession; legal title to the vehicle, however, remained in the name of Classic Recreations. That Classic had not transferred legal title to Halicki or Eleanor Licensing—and did not intend to do so—was emphasized a month later in the demand letter sent by Classic's counsel to Eleanor Licensing. In their complaint filed August 15, 2014, approximately four years eight months after Classic's demand letter, Eleanor Licensing and Halicki sought specific performance of certain provisions of the license agreement, including that Classic transfer legal title to Eleanor No. 1 to Halicki, and alleged that Classic had breached the license agreement "by attempting to assume possession, custody, or control of Eleanor No. 1" in May and June 2014.

Contract claims relating to Classic's refusal to transfer legal title to the sample car to Halicki were barred by the four-year statute of limitations governing actions for breach of a written contract (Code Civ. Proc., § 337), as Classic argued in the trial court. Contrary to the court's finding, Jason Engel did not "harbor[] a secret intent in 2009 not to turn over title"; the

16

demand letter of November 20, 2009 made plain that Classic Recreations held legal title to the sample car in its name and did not intend to transfer title to Eleanor Licensing or Halicki. Indeed, far from somehow suggesting it would comply with the provisions of the license agreement and transfer title to Eleanor Licensing and Halicki, Classic demanded they return possession of the sample car to it as part of the consideration for settling the claims it asserted against Eleanor Licensing. Moreover, Eleanor Licensing and Halicki were well aware that Classic held the legal title and refused to transfer it throughout the period from termination of the license agreement in October 2009 to the time of Jason Engels's attempts to regain possession of the sample car from the Focus showroom in June 2014. The record is totally devoid of evidence that would permit use of the delayed discovery rule articulated in *April Enterprises, Inc. v. KTTV*, *supra*, 147 Cal.App.3d 805 to the breach of contract claim relating to the failure to transfer title.[10]

---

[10]     In *April Enterprises, Inc. v. KTTV*, *supra*, 147 Cal.App.3d 805, this court applied the delayed discovery rule to a cause of action for breach of contract when the plaintiff did not discover the destruction of its property (the erasure of videotapes) until long after its occurrence. As we explained, the injury was "difficult for the plaintiff to detect"; the defendant was in "a far superior position to comprehend the act and the injury"; and the defendant "had reason to believe the plaintiff remained ignorant he had been wronged." (*Id.* at p. 831; see *Gryczman v. 4550 Pico Partners, Ltd* (2003) 107 Cal.App.4th 1, 5 [delayed discovery rule applicable to breach of contract action because defendant "not only breached the contract 'within the privacy of its own offices' but the act which constituted the breach—failure to give notice of the option offer—was the very act which prevented plaintiff from discovering the breach"]; see also *Cleveland v. Internet Specialties*

17

Although the refusal to transfer title was made known to Eleanor Licensing and Halicki in late 2009, Classic's efforts in May and June 2014 to regain possession of the sample car through the Oklahoma writ of replevin and notice to LAPD that the car had been taken from it without authorization occurred only a few months before the August 2014 filing of the instant lawsuit. The statute of limitations should not be an issue in challenging the lawfulness of that conduct, regardless of the theory of liability. But the suggestion that those actions somehow constituted a breach of the long-since-terminated license agreement lacks any merit, as Eleanor Licensing and Halicki now seem to acknowledge by arguing in their respondents' brief that, "[f]or all the palaver about the license agreement," their lawsuit was not about the parties' contract, but was "a classic conversion claim."

> b. *The claims for return of personal property and to quiet title*

As Classic emphasizes in its reply brief, Eleanor Licensing and Halicki did not plead or attempt to prove a cause of action for conversion. However, they did plead, and the trial court ruled they had proved, a cause of action for recovery of specific personal property, a code-based cause of action (see Code Civ. Proc., § 627), often incorrectly referred to as a "claim and delivery action." (See generally 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 692,

---

*West, Inc.* (2009) 171 Cal.App.4th 24, 33 [breach of contract and fraud claims arising from false representations that new business venture had failed when it was actually operating at a profit under a different name].) There was nothing secret or hidden about Classic's refusal to transfer legal title to Eleanor No. 1 to Halicki.

18

at p. 110 [an action for the specific recovery of personal property, with damages in a proper case for its detention, "insofar as it needs a label or designation, might be termed 'specific recovery of personal property.' [Citations.] [¶] At an early date, however, California courts borrowed the statutory title of the provisional remedy of 'claim and delivery,' which gives immediate possession pending trial, and the action is often called a 'claim and delivery action.'"].)

Code of Civil Procedure section 338, subdivision (c)(1), creates a three-year limitations period for "actions for the specific recovery of personal property." (See *Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1087 ["[c]auses of action for claim and delivery or conversion of personal property are governed by the three-year statute of limitations as set forth in section 388, subdivision (c)"].) In most cases, the act of wrongfully taking the property triggers the statute of limitations. (*AmerUS Life Ins. Co. v. Bank of America, N.A.* (2006) 143 Cal.App.4th 631, 639; see *Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 915-916 [recognizing general rule but applying delayed discovery doctrine].) Because Eleanor Licensing and Halicki's fifth cause of action for return of personal property was based on Classic's interference with their possession and control of the sample car in May and June 2014—only a few months before they initiated their lawsuit—this claim was timely filed. Those portions of the judgment restoring possession of Eleanor No. 1 to Eleanor Licensing and Halicki and awarding damages (storage costs incurred as a result of Classic's wrongful actions in causing the vehicle to be impounded by the police) are properly affirmed.

Similarly, Eleanor Licensing and Halicki's sixth cause of action to quiet title was timely filed. To be sure, Eleanor

19

Licensing and Halicki were aware no later than November 2009 that Classic did not intend to voluntarily transfer legal title to the sample car and, as a consequence, had reason to know there might be a dispute concerning ownership of the vehicle at some future point.[11] However, the general rule in quiet title actions (usually articulated in cases involving real property, not personal property) is that the statute of limitations ""does not run against one in possession of land."" (*Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 477; accord, *Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560 (*Muktarian*); *Crestmar Owners Assn. v. Stapakis* (2007) 157 Cal.App.4th 1223, 1228.)[12] Even if a party in possession knows of a potential adverse claim, "there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him." (*Muktarian*, at pp. 560-561.) "Thus, mere notice of an adverse claim is not enough to

---

[11]    Notably, Classic's November 2009 demand letter did not assert ownership or a right to immediate possession of the sample car. Rather, it offered to accept return of the car, together with a cash payment, to settle its claims relating to the license agreement and insisted only that Eleanor Licensing not drive the car because it was uninsured.

[12]    There is no statute of limitations specific to quiet title actions. (*Muktarian, supra*, 63 Cal.2d at p. 560; *Salazar v. Thomas, supra*, 236 Cal.App.4th at p. 476.) Instead, courts refer to the underlying theory of relief (for example, adverse possession, breach of contract or fraud) to determine which limitations period applies. (*Muktarian*, at p. 560.) However, because Eleanor Licensing and Halicki initiated their quiet title action within three months of Classic's activities interfering with their possession of the sample car, we need not determine which limitations period would otherwise apply.

commence the owner's statute of limitations." (*Salazar*, at p. 478.)

Here, following Classic's demand letter of November 20, 2009 and Eleanor Licensing's rejection of Classic's claims as "frivolous," Classic took no action to assert any claim or right to possession of Eleanor No. 1 until May and June 2014. It was those events in 2014 that triggered the limitations period for the quiet title action.

Neither *Walters v. Boosinger* (2016) 2 Cal.App.5th 421 nor *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, the cases relied upon by Classic, supports a conclusion Eleanor Licensing and Halicki's quiet title action was not timely filed. The plaintiff in *Walters* had argued a quiet title claim based on the theory a deed was void ab initio "is not subject to *any* statute of limitation and 'can be brought at *any* time.'" (*Walters*, at p. 433.) The court of appeal rejected that contention. (*Ibid*.) Noting the plaintiff had not raised any contention as to which statute of limitation applied to his claim or maintained that his quiet title action had been timely filed under any governing limitations period, the court expressly declined to consider that issue. (*Id.* at p. 433, fn. 16.) The court did not, as Classic asserts, hold that actual knowledge of a potential dispute concerning ownership triggered the limitations period for a quiet title action.

*Ankoanda v. Walker-Smith*, *supra*, 44 Cal.App.4th 610 involved an action to quiet title in which the property owner alleged she had conveyed a joint tenancy interest in the property to her tenant based on fraud or mistake, believing the tenant would reconvey the interest when it was no longer needed to qualify for a government program providing subsidies to daycare centers. (*Id.* at pp. 613-614.) The tenant in a letter from her

21

attorney, however, had claimed a genuine ownership interest pursuant to the deed creating the joint tenancy more than three years before the owner filed her quiet title action. The court of appeal held the action was barred by the three-year limitations period of Code of Civil Procedure section 338, subdivision (d), rejecting the owner's contention the limitations period was tolled because, as landlord, she was at all times deemed to have seisen and possession of the leased property through her tenant. (*Ankoanda*, at pp. 615-616.) The court held the Supreme Court's ruling in *Muktarian*, *supra*, 63 Cal.2d at page 560 that no statute of limitations runs against a plaintiff seeking to quite title while he or she is in possession of the property required "exclusive and undisputed possession," and did not apply to the alleged joint ownership situation presented by the case before it. (*Ankoanda*, at pp. 616, 618.) The court added, "as joint tenants, both Walker-Smith [the tenant] and Ankoanda [the landlord] had an equal right to possession of the entire property, but did not have right to the exclusive possession of the property as against each other. [Citation.] Thus, case law stating the general proposition that a landlord remains seised and possessed of leased property through her tenant as against third parties and/or the tenant is clearly distinguishable from a case like the present one where the occupying tenant claims a joint ownership interest pursuant to a recorded deed and the question is whether the deed should be invalidated." (*Id*. at p. 618.)

Thus, although the court of appeal in *Ankoanda* held the letter from the tenant's lawyer asserting an ownership interest in the property started the running of the governing three-year limitations period, as Classic argues, that conclusion was expressly premised on the disputing parties' joint possession of

the property. (*Ankoanda v. Walker-Smith*, *supra*, 44 Cal.App.4th at p. 618.) The court did not—indeed, could not—overturn the Supreme Court's holding in *Muktarian* that, as to the party who is in exclusive possession of the property at issue, knowledge of a potential adverse claim is not enough to trigger the limitations period for a quiet title action. (See *Crestmar Owners Assn. v. Stapakis*, *supra*, 157 Cal.App.4th at p. 1229 [unusual facts present in *Ankoanda* distinguished it from the very different circumstances in *Muktarian*].) Here, like the situation in *Muktarian*[13] and unlike *Ankoanda*, even though Classic retained legal title to Eleanor No. 1, Eleanor Licensing had possession and control of the car before it was impounded by the LAPD. The time to file a quiet title action began to run only with that event: "[T]itle does not equal possession." (*Crestmar*, at p. 1230.)

### 3. *The Alter Ego Finding Is Not Supported by Substantial Evidence*

"'Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.]' [Citation.] '[T]he corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice

---

[13] In *Muktarian* a father had executed a grant deed conveying certain real property to his son (apparently to keep his second wife from acquiring it), but continued to live on the property. (*Muktarian*, *supra*, 63 Cal.2d at pp. 559-560.) It was in this context—where the father retained possession but knew his son had legal title—that the Supreme Court held the limitation period for the father's quiet title action did not start to run until the son acted in some way to challenge his father's rights in the property. (*Id.* at pp. 560-561.)

23

so require.' [Citation.]  Before a corporation's obligations can be recognized as those of a particular person, the requisite unity of interest and inequitable result must be shown.  [Citation.]  These factors comprise the elements that must be present for liability as an alter ego." (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 411; see *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 [alter ego doctrine does not apply without evidence showing that "some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form"]; *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838.)

The trial court based its alter ego findings on the following evidence:

- Jason Engel told Halicki that "Classic Recreation[s] and T&D Motors are one and the same.  It's me and my Dad Tony that do all the decision making, so you [Halicki] and or Mr. Leone will only be dealing with us, no one else."

- Jason Engel "testified under oath in a petition filed in the Oklahoma court that Classic Recreations LLC is his DBA"—that is, his fictitious business name.[14]

---

[14]   The reference to Classic Recreations LLC as Jason Engel's dba appears only in the caption of the replevin petition, prepared by Engel's attorney.  Although Engel verified that the allegations in the petition were "true and correct based on my knowledge and belief," it was something of an overstatement for the court to find that Engel had testified under oath in an Oklahoma court proceeding that Classic Recreations was simply a dba, as set forth on page 13 of the statement of decision, let alone that he had "assert[ed] under oath in a court of law that he is an alter

24

- Tony Engel provided Eleanor Licensing with his personal guarantee to honor any agreement entered by the parties.

The court concluded this evidence was sufficient to demonstrate such a unity of interest and ownership between Jason Engel and Tony Engel, on the one hand, and Classic Recreations and T&D Motor, on the other hand, that the corporate and individual personalities merged. In addition, the court found it would be inequitable for Jason Engel to assert under oath in an Oklahoma court proceeding that Classic Recreations was simply a dba and to make statements to that effect on which he intended Eleanor Licensing and Halicki to rely and then not to treat him as an alter ego of Classic Recreations.

Although it appears from the record that Classic Recreations and T&D Motor are closely held family businesses, the evidence submitted is insufficient to support the alter ego findings. That Tony Engel and Jason Engel, as co-owners of the two businesses, were authorized to make all decisions related to the license agreement and the manufacture and sale of the Eleanor replicas in no way indicates any commingling of personal and corporate assets, use of corporate assets for personal purposes, gross undercapitalization of the corporate entities, disregard of corporate formalities or any other of the many circumstances that might support the conclusion that no separation actually existed between these two individuals and the two corporate entities. (See, e.g., *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073 [listing a series of factors identified

---

ego of Classic Recreation[s] LLC," as the court reformulated this point on pages 26-27 of its statement of decision.

25

in prior court decisions to support a unity-of-interest finding]; *Leek v. Cooper, supra,* 194 Cal.App.4th at pp. 417-418 [same].) Moreover, Tony Engel's offer of a personal guarantee to Halicki in connection with the corporations' contractual obligations, if meaningful at all in this context, suggests that he and his resources were viewed as distinct from those of the corporations.

Finally, while the identification of Classic Recreations as Jason Engel's fictitious business name in the Oklahoma state court replevin proceedings certainly implies that Engel did not consider Classic Recreations a distinct legal entity for purposes of asserting ownership of Eleanor No. 1, this evidence does not support an alter ego finding as to Tony Engel or with respect to either individual and T&D Motor. In addition, as discussed, the second prong of an alter ego determination requires a finding there would be an inequitable result if the acts in question were treated as those of the corporation alone: "'Under the alter ego doctrine, then, when the corporate form is *used* to perpetrate a fraud, circumvent a statute, *or accomplish some other wrongful or inequitable purpose*, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners.'" (*Turman v. Superior Court* (2017) 17 Cal.App.5th 969, 981; accord, *Sonora Diamond Corp. v. Superior Court*, *supra*, 83 Cal.App.4th at pp. 538-539.) Although the trial court may have correctly applied the doctrine of judicial estoppel to preclude Jason Engel from denying the existence of a unity of interest between him and Classic Recreations, his assertion that Classic Recreations functioned as his fictitious business name did not establish that he used the corporate form

26

for any fraudulent or deceptive purpose, as required to impose alter ego liability.

4. *Jason Engel Was Properly Named as a Defendant in the Causes of Action To Quiet Title and for Return of Personal Property; Tony Engel Was a Proper Defendant in the Quiet Title Cause of Action*

A quiet title action may name as a defendant any party who might assert a claim to title in the property. (See Code Civ. Proc., §§ 762.010 ["[t]he plaintiff shall name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought"], 762.060, subd. (b) ["[i]n an action under this section, the plaintiff shall name as defendants the persons having adverse claims that are of record or known to the plaintiff or reasonably apparent from an inspection of the property"]; see also *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1506 [explaining one purpose of 1980 revision of statutory scheme for quiet title actions was to permit the action to proceed against "any or all adverse claimants," making final quiet title judgment "good against all the world as of the time of the judgment"]; see generally *Caira v. Offner* (2005) 126 Cal.App.4th 12, 25, fn. 7 ["action to quiet title may be used to establish ownership of personal property as well as real property"].) Eleanor Licensing and Halicki argue, and Classic does not dispute, that, because neither Jason Engel nor Tony Engel disclaimed any interest to Eleanor No. 1, they were each properly named as defendants in the quiet title cause of action. As a consequence, notwithstanding our reversal of the alter ego findings as to the Engels, they are properly included in those portions of the judgment in which the court ordered Eleanor Licensing to retain possession of the sample car, quieted title to the sample car to

27

Eleanor Licensing and issued an injunction requiring transfer of title to the vehicle to Eleanor Licensing, precluding Classic from transferring title to anyone else and restraining Classic from seeking possession of, or harming, the sample car (paragraphs 1, 2, 4, 5, 6 and 8).

Because Jason Engel asserted personal ownership of the sample car in the Oklahoma replevin action, he was also properly named as a defendant in Eleanor Licensing and Halicki's cause of action for return of personal property. As such, Jason Engel was properly held jointly and severally liable with the two corporate entities for damages equal to the storage fees imposed when the sample car was seized from Fusion and impounded by the LAPD. (See Code Civ. Proc., § 667 ["[i]n an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case delivery cannot be had, and damages for the detention"]; *Crosswhite v. American Ins. Co.* (1964) 61 Cal.2d 300, 302 [party improperly withholding personal property is "liable not only for the property or its value, but also for damages for the detention from the time of the demand"]; see also *Spencer Kennelly, Ltd. v. Bk. of Amer.* (1942) 19 Cal.2d 586, 589 ["in a claim and delivery action where plaintiff prevails and the personal property involved has diminished in value, deprecation is a proper element of damages"].)

5. *The Engels Are Not Liable for Attorney Fees*

The Engels are neither parties to the November 1, 2007 license agreement nor the alter egos of Classic Recreations and T&D Motor, the two corporations that entered into the agreement with Eleanor Licensing. Because the award of attorney fees to Eleanor Licensing and Halicki as prevailing parties was based on the fee provision in the license agreement and Civil Code

28

section 1717, the finding that Jason Engel and Tony Engel are jointly and severally liable for that award is reversed. (See *Wilson's Heating & Air Conditioning v. Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1332 [although contracts between general contractor and subcontractors had attorney fee provisions and notwithstanding stipulated judgment against general contractor and construction lender, plaintiff subcontractors were not entitled to recover attorney fees from construction lender that was not a signatory to the subcontracts, was not the alter ego of the general contractor and had not assumed general contractor's obligations when it foreclosed on the property]; see generally *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 127.)

## DISPOSITION

Paragraph 3 of the judgment entered April 5, 2016, ordering Classic Recreations, T&D Motor, Jason Engel and Tony Engel to perform certain terms of the November 1, 2007 license agreement, that portion of paragraph 7 of the judgment that finds Tony Engel jointly and severally liable for damages and prejudgment interest and those portions of paragraph 7 of the judgment and the postjudgment order that find Jason Engel and Tony Engel jointly and severally liable for the award of attorney fees are stricken. In all other respects the judgment and postjudgment order awarding attorney fees are affirmed. Eleanor Licensing and Halicki are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.                          SEGAL, J.

29